## The Farmers and Mechanics' Bank *against* Ege.

A purchaser of real estate at sheriff's sale in the middle of a year, is not entitled to the rent payable by the tenant, if by the terms of the lease the same was payable in advance at the beginning of the year.

A purchaser at sheriff's sale, may either affirm or disaffirm an existing lease of the premises; by affirming it he may claim the rent payable under it, but if he choose to disaffirm it, which he does by giving the tenant notice to quit possession, he cannot claim any thing under the terms of the lease.

ERROR to the special court of common pleas of *Cumberland* county.

This was an issue directed to try whether the Farmers and Mechanics' Bank of the city of Philadelphia, was entitled to the proceeds of the sale of the personal property of Mentor Perdue, under the following circumstances :

George Ege being the owner of " Mount Holly Iron Works," leased the same on the 25th of February 1837, to Mentor Perdue

for five years from the 1st of April 1837, at the annual rent of 6000 dollars, payable in advance each year. Previously to the date of the lease, the Farmers and Mechanics' Bank obtained a judgment against George Ege for 20,000 dollars, upon which an execution issued, and the said iron works were levied and condemned, and upon a *venditioni exponas*, they were sold to the Farmers and Mechanics' Bank, and the sheriff's deed made and acknowledged on the 24th of August 1838. On the 3d of September 1838 the bank gave notice to Mentor Perdue to surrender the possession of the premises to them within three months, and on the 9th of November 1838, they took out a writ of *estrepement* to prevent him from cutting timber for the works. On the 31st of October 1838, a *fieri facias* was issued at the suit of A. Babbit against Mentor Perdue, which was then levied on his personal property at the Mount Holly Iron Works, consisting of stock, wood, coal, horses, iron, wagons, &c., and the same was sold on the 18th of December 1838 for 1120 dollars and 85 cents. The bank claimed the rent which had accrued from the 1st of April 1838, for the works, and on the 20th of November 1838, gave notice to the sheriff to retain the same for them out of the proceeds of the personal property of Perdue; and the question in this case was, whether they were entitled to it.

*Durkee*, president, was of opinion, that the bank by disaffirming the lease between Ege and Perdue, had deprived themselves of any claim for rent, and directed the jury to find for the defendant.

*Grimshaw* and *Alexander*, for plaintiff in error, relied upon the act of assembly relating to sheriffs' sales, *Str. Purd.* 378, section 83 and page 383, section 119, and cited 6 *Bac. Ab.* 44, tit. Rent; *Cowp.* 242; *Sir T. Jones* 148.

*Watts*, for defendant in error, cited 1 *Term Rep.* 387.

The opinion of the court was delivered by

ROGERS, J.—The money now in court for distribution, arises from the sale of the personal estate of Mentor Perdue, who was the tenant of George Ege, under a lease for the Mount Holly Iron Works, dated the 25th of February 1837, for five years, at the annual rate of six thousand dollars, payable in advance on each successive 1st of April. The Farmers & Mechanics' Bank purchased the premises at sheriff's sale, and on the 24th of August 1839, the sheriff of Cumberland county acknowledged the deed. The property was sold on a judgment of the bank against Ege, entered in April 1820. The bank claims the rent which accrued from the 1st of April 1839, and relies on the 119th section of the act of the 16th of June, 1836—"If any lands or tenements shall be sold upon execution, as aforesaid, which, at the time of such sale, or afterwards, shall be held, or possessed by a tenant, or

[The Farmers and Mechanics' Bank v. Ege.]

lessee, or person holding, or claiming to hold the same under the defendant on such execution, the purchaser of such lands or tenements shall, upon receiving a deed for the same, as aforesaid, be deemed the landlord of such tenant, lessee, or other person, and shall have the like remedies, to recover any rent or sums accruing subsequently to the acknowledgment of a deed to him, as aforesaid, *whether such accruing rent may have been paid in advance, or not, if paid, after the rendition of the judgment on which sale was made,* as such defendant might have been, if no such sale had been made." The purchaser is placed in the situation of the original landlord, with the like remedies, with a provision, (which could not from part of the original bill,) that he should be entitled to the accruing rent, even if paid in advance, provided it was paid after the rendition of the judgment on which the sale was made. To what class of cases does this clause apply? and what evils was it designed to remedy? and what is intended by the expression " the payment of the rent in advance?" Can it apply when it is part and parcel of the contract, that the rent should be so paid? Such a construction would be impolitic and unjust. For, suppose Perdue, in compliance with his contract, had voluntarily paid, or had been compelled by distress, to pay the whole rent to Ege on the 1st of April—could it enter into the minds of the legislature, that he should be bound to pay it again, after the sale, on the judgment? How could he tell whether the bank would proceed on their judgment? You place him in this perilous predicament. If he does not pay, he is liable to a distress, and if he discharges his obligation with punctuality and good faith, according to his contract, he does it at the risk of being compelled to pay it again at the option of the creditor. But what was the mischief this clause was designed to reach? It strikes me it was intended to avoid the fraud and collusion which may arise either from payment, or the allegation of the payment in advance, where the rent was not, by the terms of the lease due. The words of the court are, " whether the accruing rent may have been paid in advance." In advance of what? Why clearly, in advance of the time when the rent became due. The legislature supposed, that where a judgment was rendered, and the tenant chose to anticipate his payments, it must be done at his own risk, and in this, as it is done voluntarily, there is nothing of which he can complain. But where the payment is made in compliance with the contract, and there is no danger of either fraud or collusion, it does not call for so extraordinary a remedy. They surely could not intend to prohibit such agreements, nor could they have designed to prevent the tenant from fulfilling his contract with said bank. It moreover seems to me, that this, by any fair construction, cannot be viewed as a rent accruing after the acknowledgment of the sheriff's deed. The rent, according to the terms of the deed, accrued, or was due, (which I take it is the same thing,) before the acknowledgment. We feel a just reluctance to wrest words from

their ordinary import, to give them, a construction which would lead to a violation of good faith, and in many cases would operate so unjustly.

The lease between Ege and Perdue was dated the 25th of February 1837, but the judgment on which the land was sold, was entered in April 1820. The purchaser, therefore, had the right to affirm, or disaffirm the lease. It seems clear, that he elected the latter, and if so, what right has he to rent which he can only claim in quality of landlord.? Before the expiration of the lease, he gave notice, as he had a right to do, to Perdue, to quit, and moreover sued out a writ of estrepement to prevent waste. The latter was an equivocal act, but connected with the former, it removes all doubt as to the intention of the bank.

Judgment affirmed.