Jones and Another *v.* Thomas.

Jones
v.
Thomas.

The improper admission of testimony, which could have had no effect on the decision of the cause, cannot be assigned for error.

If land mortgaged be sold under a decree of foreclosure, &c., the purchaser will be entitled to the crops growing at the time of the sale, in preference to a person claiming under the mortgagor and whose claims originated subsequently to the mortgage.

The statute of 1843, depriving a mortgagee of the right of possession, has no effect after foreclosure and sale of the premises.

Wednesday,
July 7.

APPEAL from the *Union* Circuit Court.

Smith, J.—This was an action of replevin brought by the appellants against the appellee, for the wrongful detention of 500 bushels of corn. There were two pleas. 1st, *non detinet*, and, 2d, property in one *Thomas Powell.* The cause was submitted to the Court below, by consent, upon an agreed statement of the facts. Upon these facts, the Court found for the defendant on the issue presented by the second plea, namely, that the corn was the property of *Powell,* and judgment was rendered accordingly. From this finding and judgment the plaintiffs appealed.

The following were the material facts in evidence: One *George Bennett,* being the owner of a certain tract of land, on the 6th of *September,* 1841, mortgaged it to *Thomas Powell* to secure the payment of 600 dollars, and in *March,* 1842, executed another mortgage to said *Powell* to secure the further sum of 300 dollars. The plaintiffs, *D.* and *C. Jones,* obtained a judgment on the docket of a justice of the peace for 65 dollars, and filed a transcript for the purpose of binding the lands of *Bennett,* in the office of the clerk of the Circuit Court on the 6th of *August,* 1842. An execution issued upon this judgment from the Circuit Court, after the usual proceedings in such cases, which was levied upon the lands mortgaged to *Powell;* and at the sale by the sheriff on the 29th of *April,* 1844, the plaintiffs purchased the rents and profits for two years in satisfaction of their said execution. The sheriff executed a deed and put them in possession. They then leased the premises to the defendant, *Thomas,* for their said term of two years, the latter agreeing to deliver them one-half of the wheat, oats, hay, and corn raised on the

land, by way of rent, and the plaintiffs agreeing that *Thomas* should be discharged of all liability for the rent, in case the *Union* Circuit Court should afterwards decide that they were not entitled to receive it. Under this lease, the plaintiffs received their share of the crops from *Thomas* up to the 8th of *August*, 1845, that is, of all the crops for the year 1844, and of all the crops for the year 1845 except the corn.

On the 4th of *April*, 1845, *Powell* obtained a decree of foreclosure of the mortgages before mentioned, and on the 9th of *August*, 1845, he purchased the fee-simple of the premises at the sheriff's sale, under his decree, for 810 dollars, leaving a considerable portion of the mortgage-debt unpaid. The growing crops were not levied upon or valued. The sheriff delivered the nominal possession of the land to *Powell* on the 9th of *August*, 1845, and executed to him a deed for the fee. *Thomas* remained in the actual possession, the plaintiffs and *Powell* agreeing not to disturb him in his possession as tenant, but both the plaintiffs and *Powell* contended for the landlord's share of the growing crops of corn, raised that year by *Thomas* under his lease, the landlord's share of the other crops having been delivered prior to the sale under the mortgages.

On the 16th of *December*, 1845, *Thomas*, without the knowledge or consent of *Powell*, nominally delivered to the plaintiffs 500 bushels of corn, in two rail pens on the premises, as the landlord's share of the crop of that grain, under a written agreement, however, that the plaintiffs were not to remove the corn from the premises unless by order of the *Union* Circuit Court, if *Powell* should forbid them from doing so. Subsequently, on the 24th of *December*, they went to remove the corn, when *Thomas* refused to permit them and they then sued out their writ of replevin.

Thus far the facts were agreed upon. The defendant also proved, that the attorney of *Powell* on the next day after the sale, forbade the delivery to the plaintiffs of the corn then growing, for rent, and that *Thomas* agreed with *Powell's* attorney not to deliver the corn until the law decided to whom it belonged. This last testimony was objected to by the plaintiffs, and its admission is one of the errors assigned upon the record.

We do not perceive that the plaintiffs could have been injured by this testimony. It was competent for the defendant to show that he had been forbidden by *Powell* to deliver the corn, and though he could not properly give evidence of his own agreement with or admissions to *Powell*, which appears to be the portion objected to, they could have no effect upon the decision of the question before the Court.

It appears that the plaintiffs purchased their term under a judgment subsequent to the mortgages of *Powell*, and their lease to *Thomas* was also necessarily subsequent to the mortgages. The only question then is, who was entitled to the growing crops on the foreclosure and sale of the mortgaged premises? The principles of law on which this question must be decided are well established.

The plaintiffs at the sale under their execution purchased *Bennett's* equity of redemption, and acquired, for their term, such rights and privileges as he had and no other. They may therefore be regarded as mortgagors in possession, and as such entitled, while remaining in possession, to receive the rents and profits without any accountability to the mortgagee. But they could not make a valid lease to bind the latter. 2 Cruise's Dig. 108. They were but tenants themselves, under that peculiar relation which subsists between mortgagors and mortgagees. A mortgagor is not entitled to emblements as tenants at will are. 4 Kent's Comm. 156. A mortgagee may evict the mortgagor without notice and retain the emblements, and if a lease be granted subsequently to the mortgage without his concurrence, he may evict the lessee without notice and retain the emblements. Coote on Mort. 351.— 2 Swift's Dig. 156.—2 Cruise's Dig. 108. The reason of this was said by the older writers to be, that the lessee was evicted by a title paramount, and the lease of the mortgagor amounted to a disseisin of the mortgagee which rendered the lessee upon entry a wrongdoer. But a sufficient and better reason appears to be, that every person who takes under a mortgagor takes subject to all the rights of the mortgagee unimpaired and unaffected. 4 Kent's Comm. 157.—16 Johns. R. 292.— 18 *id*. 487.—6 Cow. 147. When, therefore, a mortgagee obtains the absolute estate in fee of the mortgaged premises, by becoming the purchaser under a foreclosure and sale, he is

entitled to the emblements, and may maintain trespass against the mortgagor or his lessee for taking and carrying away the crops growing at the time of the sale; *Lane* v. *King*, 8 Wend. 584; the title and interest of the mortgagor or his lessee being subject to and liable to be divested by a foreclosure and sale of the mortgaged premises. *Shepard* v. *Philbrick*, 2 Denio, 174.

According to these principles, when *Powell* purchased the mortgaged land at the sale on the 9th of *August*, 1845, he was entitled to the crop of corn then growing, the emblements being connected with and passing with the land as a part of the security for the mortgage-debt. The estate of the mortgagee and from which the mortgagor was barred by the foreclosure included so much. The mortgagee could not hold the plaintiffs accountable for the rents and profits they had previously received, but it is manifest that no subsequent agreement or arrangement between the latter and *Thomas*, their lessee, without the concurrence of *Powell*, could have any effect to divest him of his right of property. The delivery of the corn in *December*, after the sale on the decree of foreclosure, appears to have been conditional and with an express reservation that it should not be removed without the consent of *Powell*, until the question of ownership should have been decided. But if it had been an unconditional delivery between *Thomas* and the plaintiffs, as the right of property then belonged to neither of them, the ownership could not have been changed.

We are aware that in *Cassilly* v. *Rhodes*, 12 Ohio R. 88, the Supreme Court of *Ohio* has taken a different·view of the law applicable to this case. It may sometimes operate harshly on the interests of tenants and lessees, but this is a consideration which should be referred to the legislature. It is our business to apply the law as we find it, and with the exception of·the *Ohio* case, all the authorities we have seen are decidedly against the plaintiffs.

The provisions of the Revised Statutes of 1843, depriving the mortgagee of the right of possession before foreclosure and sale, do not alter the relation which would otherwise have subsisted between the mortgagor and mortgagee after such sale, and they cannot have any effect upon this case.

The decision of the Circuit Court must therefore be sustained.

*Per Curiam.*—The judgment is affirmed with costs.

*J. S. Reid*, for the appellants.

*J. Yaryan*, for the appellee.