## Bittinger *versus* Baker.

A lessee of land encumbered with a judgment prior to the lease, under which the premises are levied and sold, is entitled to the waygoing crop sown by him prior to the levy and condemnation, in preference to the sheriff's vendee. Sallada *v.* James, 6 *Barr* 144, and Groff *v.* Levan, 4 *Harris* 179, overruled.

By the provisions of the Execution Act of 16th June, 1836, sections 105, 111, and 119, a lessee under a lease, of later date than a lien, after a sheriff's sale under such lien, becomes a tenant at will of the sheriff's vendee.

If the tenant in such case had sown his crop before he was notified of the purchaser's intention to determine the tenancy, he will be entitled to take it away.

Where a person is in possession of land, under a title that may be determined by an uncertain event, not within his control, it is essential to the interests of agriculture that such a determination of his lease shall not prevent him from reaping what he has sown.

. Under an execution law, a lessee in possession, at the time of a sheriff's sale of the premises, is to be treated either as a tenant for years or at will: if for years, he is entitled to the waygoing crop under the general custom or common law of Pennsylvania: if at will, he has the right to the larger emblements or waygoing crop that belongs by the common law to that species of tenancy.

ERROR to the Common Pleas of *Adams county.*

This was an action of trover and conversion, brought by Jacob Baker against William Bittinger, to recover damages for taking and converting to his own use 10,000 sheaves of wheat in the straw, to which the defendant plead not guilty. The land on which the grain in dispute grew, belonged to Isaac Trimmer, and on the 17th February, 1851, he leased it to Abraham Trimmer, for the term of one year from the 1st of April, 1851, who entered into possession, and in the autumn of the same year the grain was sown. At the time of the lease Anthony Deardorff and others held a judgment against Isaac Trimmer, entered on the 23d August, 1848. On the 1st November, 1851, a *fieri facias* was issued upon this judgment, the demised premises levied upon and condemned. A *venditioni exponas* was issued, and on the 13th April, 1852, the premises were sold by the sheriff to Jacob Baker for $4820, and a deed duly acknowledged to him on the 22d April, 1852. The grain was subsequently harvested and put into the barn on the premises, and when threshed was levied on under an execution issued upon a judgment against Abraham Trimmer, the lessee, and purchased by William Bittinger, the plaintiff in error, and by him taken away. Jacob Baker, claiming the grain growing

[Bittinger v. Baker.]

upon the land, brought this action to recover its value. Isaac Trimmer, the lessor, on the same day, after making the lease, executed a voluntary assignment of all his property to Joseph J. Kuhn, Esq., for the benefit of his creditors, which was duly recorded, and Abraham Trimmer paid the rent to the assignee.

The court below (FISHER, P. J.) instructed the jury, that "if they believed the testimony given by the plaintiff, he is entitled to recover the amount of the grain in dispute."

The jury found a verdict for the plaintiff for $308.16.

The defendant took this writ, and assigned here the charge of the court, inter alia, for error.

Buehler and Hepburn, for plaintiff in error.—The assignment amounted to a severance of the grain growing from the land, and vested the right in the trustee. The whole property was assigned for the benefit of creditors more than a year before the defendant in error bought at sheriff's sale. The trustee accepted the trust, the tenant paid him his rent, and the lease had expired before the land was sold by the sheriff.

In Stambaugh v. Yeates, 2 Rawle 161, after the land had been levied on by a fi. fa. and returned, grain was sowed on the land of defendant by a tenant. Another creditor of the landlord levied and sold the growing grain, afterwards the land was sold on a ven. exp., and the court held that the purchaser of the grain was entitled to it.

In Bear v. Bitzer, 4 Harris, the distinction is kept up that wherever there has been a severance of the crop, either by a private or judicial sale, it did not pass as appurtenant to the land. They cited: Myer's Assignees v. White, 1 Rawle 353; Bear v. Bitzer, 4 Harris 178–9; Fullerton v. Shauffer, 2 Jones 220; Bank v. Ege, 9 Watts 436.

McConaughy and Cooper, for defendant in error.—The purchaser and not the tenant is entitled to the growing crop: Sallade v. James, 6 Barr 144. The levy and sale made by the plaintiff in error was not until some five months after the defendant in error had been in full possession of the land, under the sheriff's title. The growing crop of a debtor passes by a conveyance of his land, whether executed by himself or the sheriff. There is nothing in the alleged distinction that the lease had expired before the sheriff's sale of the land. It had so far as it gave general occupancy of the land; but the right to the waygoing crop grew out of the lease. The assignment could not pass the crop, as it was not growing at the date of the assignment. There was no severance of the crop growing on the land sold by the sheriff to the plaintiff below. There was no judicial sale made of the crop prior to the

[Bittinger *v.* Baker.]

sale of the land·by the sheriff, nor was there a private sale of the growing crop by the judgment-debtor or by his assignee at any time. They cited : Sallade *v.* James, 6 *Barr* 144 ; Groff *v.* Levan, 4 *Harris* 179 ; Bear *v.* Bitzer, 4 *Harris* 175 ; Stultz *v.* Dickey, 5 *Binney* 285.

The opinion of the court was delivered by

LOWRIE, J.—There are several erroneous cases in our books of reports on the subject of the waygoing crop, which, if they are not known as such, are continually tending to mislead the bar and the bench. In Stambaugh *v.* Yeates, 2 *Rawle* 161, it was decided that if, during the currency of executions which resulted in the sale of land, the crop on it was sold by a constable, his vendee's title is good against the sheriff's vendee of the land with the crop still on it. In Myers *v.* White, 1 *Id.* 353, it was decided that, even after the commencement of suit on a mortgage, the mortgagor may dispose of his growing crop, and then it will not pass to the sheriff's vendee, though it be still growing on the land. In Smith *v.* Johnson, 1 *Penn. R.* 471, it was decided that, even after a private sale of land, the law allows the vendor to enter and carry off the crop previously sown by him.

If these cases were right, then the conclusion would be inevitable, and *a fortiori*, that a *tenant* of the owner of the land would be entitled to his waygoing crop, notwithstanding a sheriff's sale of the land before it was gathered ; for he got his title to it prior to the sale, as others did in the first two cases. But we can make no use of them ; for they are all erroneous, and have all been corrected by the decisions, declaring that all rent in grain or in money falling due after a private sale of the land, or after a judicial sale with the deed acknowledged, and all grain of the vendor or debtor then growing on the land, go to the vendee, and no assignment of them is good against the sheriff's vendee : 3 *Penn.* 496 ; 9 *Watts* 436 ; 7 *Id.* 378 ; 3 *Id.* 394 ; 5 *W. & S.* 432 ; 4 *State R.* 146 ; 16 *Id.* 175. And these corrections are fully sustained by decisions elsewhere : 6 *Geo. R.* 452 ; 6 *Barb. Sup. C. R.* 370 ; 8 *Blackf.* 428 ; 2 *Denio* 174 ; 1 *Leigh* 297 ; 2 *Mees. & W.* 54 ; 2 *Leon.* 54.

The case of Fullerton *v.* Shauffer, 12 *State Rep.* 220, if we understand the report of it, decides that a rent payable by a share of the corn, &c., and agreed in the lease to be applied to a debt due by the lessor to the lessee, is a rent paid as of the day of the lease, and that, on a subsequent sheriff's sale of the land, the lessor's share of the growing crop did not pass to the sheriff's vendee, so as to entitle him to claim it under the lease as a rent accruing after his purchase. It is difficult to reconcile this with other decisions, 4 *State Rep.* 146 ; 5 *W. & S.* 432 ; and with the Act of Assembly, which declares that rent paid in advance shall

[Bittinger *v.* Baker.]

not be good against the sheriff's vendee under a prior lien, and with the fact that a rent of a share of the crop cannot be in fact paid before the crop is gathered, and its amount ascertained. If it merely means to declare that when the sheriff's vendee affirms the lease by suing on it, he must abide by its terms; then we are not prepared to deny the doctrine. The case, however, is so defectively reported, that we cannot regard it as an authority for anything.

In recovering from the errors of the three cases first above referred to, it seems almost natural that there should be an oscillation towards the other extreme; and we come to this extreme in the cases of Sallade *v.* James, 6 *State Rep.* 144, and Groff *v.* Levan, 16 *Id.* 179, where it is decided that, when a lease is subsequent to a mortgage or judgment, a sale upon either will take away the lessee's growing crop. At first the crop, or share of the crop, of the lessor and debtor, was the matter in dispute, and the rights of the lessee were conceded: 5 *W. & S.* 432; 4 *State Rep.* 146; 12 *Id.* 220; 7 *Watts* 378. It was quite lately that the tenant's rights began to be denied. We think it was right to treat mortgage and judgment liens as entirely equivalent in their effect upon the tenant's rights; for both of them are mere liens upon land by our law, and not titles to it, and the executions to enforce them by sale have the same effect on other interests. In states where a mortgage is treated as a title to land, and not as a lien, it is natural enough that, on the foreclosure, the tenant loses his crop; for he is considered as without title, and the mortgagee enters by paramount title and takes all; but even he cannot have an action of trespass for mesne profits: 2 *Cruise Dig.* 108; *Coote on Mortg.* 351; 8 *Wend.* 584. It is plain enough, however, that this rule pays much more regard to the form than to the substance of the transaction in this respect. In Ohio the tenant's growing crop is safe even against a mortgage: 12 *Ohio Rep.* 88.

If, at the time of the acknowledgment of the sheriff's deed, there be a lessee in possession of the land, the execution law of 1836, § 119, makes him the tenant of the purchaser on the terms of his lease; and if the lease is of later date than the lien on which the sale is made, the same law, § 105, requires him to give up the possession within three months after the purchaser shall choose to give him notice to do so, and to pay to the purchaser all the rent, or the value of the use of the land, accruing after the acknowledgment of the deed, and all damages for unjust detention, §§ 111, 119; and these provisions are codified from the old law.

It seems to us very plain that this law makes the lessee, under a lease of later date than the lien, a tenant at will of the purchaser under such lien; and then it follows, on well settled common law principles, that if he had a crop in the ground before he was notified of the landlord's election to determine the tenancy,

[Bittinger *v.* Baker.]

he will have a right to take it away. It is essentially a lease for years, but subject to be determined by an uncertain event depending on the will of others, that is, on the will of lien creditors and the purchaser under their liens. As between the lessor and lessee it is a lease for years. As between the lessee and the sheriff's vendee it is a lease at the will of the latter, unless he ratifies it as a lease for a term. If a tenant subject to liens were not entitled to the privileges of a tenant at will, then liens would become a nuisance, preventing the leasing of lands ·encumbered by them, and requiring leases to be made at ruinous rates, because of the risk that is to be run by the tenant.

The influence of this Act of Assembly seems to have been overlooked in the case of Sallade *v.* James, and of Groff *v.* Levan, which follows its lead; and the decision in the former case is deduced from the assumption that a lessee can have no greater right than his lessor would have had. But this is a mistake, logical as it may at first seem; for it is a familiar principle that a lessee may be entitled to his waygoing crop even in cases where his lessor would not be: as where a widow is seised of an estate during widowhood, and marries; she cannot have her growing crop, but her lessee is entitled to his: 1 *Bl. Com.* 124; *Cro. Eliz.* 460\*; *Goldsb.* 189. Or if there be a lease by a husband of his wife's land, and then a divorce while the tenant's crop is growing, the wife shall not take it from him: 1 *Tyler R.* 409.

The principle of these cases is that, where a person is in possession of land under a title that may be determined by an uncertain event not within his control, it is essential to the interests of agriculture that such a determination of his lease shall not prevent him from reaping what he has sown: *Co. Litt.* 55; 4 *Kent* 73; 3 *Watts* 405. It is a rule demanded by the common sense of the people and depending on it; and if it does not extend to a case like the one we are considering, then we have revealed to us this strange anomaly of a rule of common law or general custom that is unknown to the people, and that operates as a snare to them when acting on the dictates of common sense.

This principle is further illustrated by numerous cases; as when a husband sows land held by him and his wife during marriage, and they are divorced, he shall have his crop; for though the suit is the act of the parties, the sentence of divorce is the act of the law: *Goldsb.* 189; *Cro. Eliz.* 460\*; 5 *Co.* 116. And where a daughter enters on land as the heir of her father and sows a crop, she may take it away though her title is defeated by an after-born son before it matures: *Co. Litt.* 55. And in tenancy by statute merchant, which is a tenancy for years, subject to be defeated by payment of the debt by other means, if it is thus defeated, the tenant shall have his growing crop: *Id.* And so much is this a favour to him that sows, that when land with a growing crop on it

[Bittinger *v.* Baker.]

is devised to A. for life with remainder to B., and A. dies before the crop is gathered, his executors cannot have it: and if a woman sows her land and marries, and her husband dies before the crop is gathered, the wife and not his executors shall have it: *Goldsb.* 189.

Under our execution law, we do not see how it is possible to treat a lessee in possession, or in partial possession by his growing crop, at the time of a sheriff's sale, otherwise than as a tenant for years or as a tenant at will. If he is tenant for years, he is entitled to the usual waygoing crop of fall grain, under the common law or general custom of Pennsylvania, unless his contract be otherwise. If he is tenant at will he is entitled to the larger emblements or waygoing crop that belongs, by the common law, to that species of tenancy. Either of these views is sufficient to protect him in the present case. But his claim here can only be as tenant for years; for his term had expired before the sheriff's sale of the land, and the only right remaining to him was his waygoing crop as tenant for years. He had no right to sow more, and therefore could reap no more. The sale of the landlord's right did not defeat the tenant's right to his crop which he had lawfully sown on a fair and honest lease.

Judgment reversed and a new trial awarded.

KNOX, J., dissented.