Gregory vs. Rosenkrans.

Gregory, Appellant, vs. Rosenkrans, Respondent.

*September 3 — September 18, 1888.*

*Mortgages: Right of mortgagee to ice cut before foreclosure.*

A mortgagee and purchaser on foreclosure sale of ice-houses and of the right to cut ice from a pond, does not acquire title to ice cut and stored in the ice-houses by a lessee of the mortgagor prior to the foreclosure sale.

APPEAL from the Circuit Court for *Milwaukee* County. The case is sufficiently stated in the opinion. Plaintiff appeals from a judgment in favor of the defendant.

*G. W. Hazelton*, for the appellant, argued, among other things, that whatever may be said of the license to cut ice, the lease of the premises for a term of years with the option to purchase the land at a stated price constituted an interest in real estate, and the assignment of the same to defendant as security was in the nature of a mortgage of realty. 2 Story's Eq. Jur. sec. 1021; Jones on Mortg. sec. 136; *Bull v. Shepard*, 7 Wis. 460; *Durkee v. Stringham*, 8 id. 1; *Button v. Schroyer*, 5 id. 598; *Van Rensselaer v. Dennison*, 35 N. Y. 393. The mortgagor was in possession, and under the law of this state had all the rights of absolute owner until his equity was duly foreclosed. *Brinkman v. Jones*, 44 Wis. 498; *Wood v. Trask*, 7 id. 572. And this possession could not be disturbed till sale under decree confirmed. *Woehler v. Endter*, 46 Wis. 307; *Welp v. Gunther*, 48 id. 543; *Allen v. Elderkin*, 62 id. 627.

For the respondent there was a brief by *Gregory, Bird & Gregory*, and oral argument by *G. W. Bird*. They contended, *inter alia*, that the ice was a part of the land over which it was formed, and defendant's interest therein and lien thereon, acquired by the assignment of the lease and contract, attached as soon as it was formed and were paramount to any interest plaintiff could acquire therein under Atkins, and whatever interest plaintiff might have was sub

ject to the prior rights of the defendant. That ice, under the facts here presented, is a part of the land over which it is formed, and as such belongs to the owner of the land, is established by an unbroken current of decision. *Washington Ice Co. v. Shortall*, 101 Ill. 46; *Brooklyn v. Smith*, 104 id. 429; *Water Works Co. v. Burkhart*, 41 Ind. 364; *Edgerton v. Huff*, 26 id. 35; *Cromie v. Board of Trustees*, 71 id. 208; *Brookville & M. H. Co. v. Butler*, 91 id. 134; *State v. Pottmeyer*, 33 id. 402; *Myer v. Whitaker*, 55 How. Pr. 376; *Wood v. Fowler*, 26 Kan. 682; *Lorman v. Benson*, 8 Mich. 18; *Stevens v. Kelley*, 78 Me. 445; *West Roxbury v. Stoddard*, 7 Allen, 158; *Paine v. Woods*, 108 Mass. 160.

ORTON, J. The only facts of this case necessary to be stated to make the only question involved and the decision intelligible are as follows: John M. Ritter and John H. Horton owned a mill pond or lake near the city of Palmyra, and on December 6, 1881, by a written agreement, conveyed to one John Atkins the right, for the term of five years, to cut ice from said pond and store it in icehouses situated near the same. At the same date said Atkins obtained from one Reuben Rockway and wife a lease of fifteen acres of land situated near the margin of said pond, for the term of five years, for the construction of icehouses thereon in which to store the ice harvested from said pond, with an agreement therein that the said Atkins might purchase said land at the end of the term for the consideration of $500. Between the 18th day of January and the 1st day of March, 1882, the defendant had advanced and loaned to said Atkins the sum of $3,000 to be used in constructing ice-houses on said premises and procuring all the necessary tools, machinery, and appliances for the ice business, and Atkins gave him his note therefor, dated March 1, 1882, to become due October 1, 1882, and at the same time executed a chattel mortgage upon said ice-houses and all the property used in said business, to secure the

Gregory vs. Rosenkrans.

same. At the same date Atkins assigned and transferred to the defendant, as collateral security for said loan, the said agreement by which he held the exclusive privilege to cut ice on said pond, and the said lease of the said fifteen acres, and the agreement therein to purchase the same. On August 10, 1883, said mortgage and note were renewed by another mortgage upon the same property, and the time of payment extended to September 1, 1884. The defendant commenced an action for the foreclosure of said mortgages and the rights of said Atkins in said agreements and lease, about the 6th day of July, 1885, and obtained a judgment of foreclosure thereon January 22, 1886, and the mortgaged property was sold on said judgment to the defendant March 19, 1886. On April 19, 1883, Rockway and wife deeded said fifteen acres to one Richard Sleep, and Sleep and wife deeded the same to the defendant in consideration of said $500, by virtue of said agreement to sell the same to said Atkins within said lease, on the 16th day of November, 1886. Atkins continued in possession of said ice-houses and the land on which they were situated, and of the property used therewith and in said business, and in the enjoyment of said right to cut ice on said pond, until said mortgage sale and confirmation thereof to the defendant. During the year 1884 the plaintiff advanced money to said Atkins in his ice business, and in consideration thereof obtained from him the right to cut ice on said pond and store the same in said ice-houses; and the plaintiff, in the winter of 1884 and 1885, cut a large quantity of ice from said pond and stored it in said ice-houses until it could be sold or removed. This ice, or much of it, remained in said ice-houses until the defendant obtained possession of said property on said foreclosure sale, and the defendant removed or converted the same. For the value of this ice this suit is brought, and the above facts constitute the only defense. The circuit court granted a nonsuit in the case.

In the foreclosure action Atkins, the plaintiff, and others

were charged with a conspiracy to defeat the rights of said defendant in said property, by obtaining a foreclosure of a pretended mortgage held by the plaintiff and a sale of the property, etc.; but there is nothing in that part of the subject matter of said suit to affect the rights of the parties to said ice, and said ice was neither mortgaged nor sold to the defendant, and the defendant has no other right to the same than he can have by virtue of said assignment and mortgages and the foreclosure sale as above stated.

The point is made by the learned counsel of the respondent that the said ice was a part of the realty of said pond, but that question can hardly be material in a case like this, where the ice was rightfully severed from the freehold and removed to said ice-houses on other land. There is nothing in this case to make the plaintiff's right to the ice which he removed by the consent and agreement of Atkins any less than would have been the right of Atkins to the ice had he removed it to the ice-house for his own benefit. If he had the right in the season of 1884 and 1885 to cut ice from the pond, and store it in the ice-houses, and to own it as his own property, then it follows that he could give, sell, or assign such right to the plaintiff.

The contention of the learned counsel is, further, that the ice was mortgaged to the defendant, and passed to him as it might form on said pond, from year to year, and to become liable to be sold under said mortgages and assignment, and that he purchased it with all other of the mortgaged premises; and, again, that if the ice was personal property in the ice-house, if it remained there until the defendant took possession of the property, the plaintiff lost his right to it. These questions will all be disposed of by the relations of mortgagor and mortgagee in this state. It is very clear that the defendant was a mortgagee, and Atkins the mortgagor in possession, up to the time of the foreclosure sale and its confirmation. The authorities cited in respect

to the wrongful cutting of timber on the mortgaged premises are not at all applicable. The annual ice crop from year to year on a pond, which may or may not form every year, and which, if not removed, would perish or melt away, is the most ephemeral of any natural production of land. It may be likened to grass or cranberries or other uncultivated fruits, which grow naturally from the soil, or to the annual crops raised by agriculture; but less than any of these, so far as its removal would be an injury to the freehold or affect the value of the land. Atkins had the right to sever this crop from the land yearly. He mortgaged this right to the defendant. Up to the time of the sale under the mortgage, what was the right of Atkins as to the removal of the ice? That question is a very simple one, and easily answered by numerous decisions of this court establishing the character of mortgages, and the relations of the mortgagor and mortgagee as to the right of possession of the mortgaged premises before foreclosure, and the right to harvest and secure the annual crops growing thereon before that time, which are of the highest auauthority in a case like this, of such very close analogy. The mortgagor in possession up to the time of foreclosure has all the rights of absolute owner of the mortgaged premises, in respect to the growing crops or natural fruits or productions of annual growth and decay. The mortgagee has a mere lien on the land or security in it for his money. This has been so often so decided by this court as to be an elementary principle of the law of mortgages. *Wood v. Trask,* 7 Wis. 566; *Brinkman v. Jones,* 44 Wis. 498. The fee of the mortgaged premises remains in the mortgagor until foreclosure and sale. It is equally well settled in this state that the mortgagor is entitled to the crops and emblements which have been harvested and removed by him while in possession of the premises before the confirmation of the foreclosure sale. *Woehler v. Endter,* 46 Wis. 307; *Welp v.*

*Gunther*, 48 Wis. 543.  In *Allen v. Elderkin*, 62 Wis. 627, the direct question was decided, after a full examination of the statutes and decisions of this court, and it was held that neither the mortgagee nor purchaser at the foreclosure sale is entitled to the crops which had been harvested and removed before the confirmation of the sale.  Whatever may be the law in this respect in other states, such is the settled law of this state, and the authorities cited by the learned counsel of the respondent holding a different doctrine are simply inapplicable.  The ice crop in this case had been harvested and removed from the premises on which it had formed long before the foreclosure sale or confirmation. The claim that the ice remained on the mortgaged premises, which means on the land on which it had formed, by being in the ice-houses situated on other premises mortgaged, is specious, but fallacious.  The ice-houses did not produce the crop of ice; and when it had been taken from the pond and placed in the ice-houses it was personal property to all intents and purposes, and the mortgage on the ice-houses would no more carry the ice deposited therein than any other personal property belonging to the mortgagor and stored or placed therein for temporary purposes. It is not claimed that this ice was conveyed by any of the mortgages or the assignment, or passed to the defendant by the sale, *eo nomine* or directly, but as incident to the defendant's rights under the mortgages, assignment, and sale, or by operation of law.  This claim, we have seen, cannot be sustained by the law of this state.

In any view of the case, and whether the ice crop ought to be treated in analogy to emblements or growing crops or not, one thing is certain: that the plaintiff had the right, through Atkins, the mortgagor in possession, to cut and remove this ice from the pond.  It was no trespass or wrong.  The defendant, at no stage of his security rights, up to the time he became entitled to the fee and possession

of the premises under the sale, had any right to cut and remove this ice from the pond. It was severed from the freehold rightfully by authority of the owner in possession, and thus became personal property. This is too self-evident to require argument or authorities. The defendant converted the ice to his own use, and must respond to the owner for it. The circuit court directed the jury to render a verdict for the defendant. We think that the plaintiff showed his right to recover in the action, and that such direction was erroneous.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.