## J. D. REILY *v.* J. R. CARTER.

1. MORTGAGES. *Foreclosure. Confirmation. Rights of purchaser. Growing crops.*

    A purchaser under foreclosure proceedings, as against the mortgagor and those claiming under him, is entitled to all crops unsevered from the mortgaged premises at the time of confirmation of sale.

2. SAME. *Tenants of mortgagor. Notice. Practice.*

    The right of a purchaser at foreclosure sale to crops unsevered from the mortgaged premises at the time of confirmation is not affected by the fact that the mortgagor's tenant in possession was not made a party to the foreclosure proceeding.

FROM the circuit court of Wilkinson county.

HON. W. P. CASSIDY, Judge.

All facts involved in the controlling question appear in the opinion of the court.

*Bramlett & Tucker*, for appellant.

In the court below, counsel for appellee cited authorities holding that purchasers under judgment at execution sale were not entitled to growing crops. There is a distinction between such cases and the one here. The judgment is only a lien upon the land, but a mortgage or deed of trust is an estate in the land. And, in the latter case, the purchaser is entitled to the crops. See 2 Minor's Institutes, 106–41 to 4K; 2 Jones on Mort., sec. 1658; *Bank* v. *Walker*, 3 Smed. & M., 409; code 1892, § 4472.

In *Bank* v. *Walker*, *supra*, the court holds, it would seem, that the mortgagor is entitled to the severed crops at the time of the sale. While the testimony shows here that a small portion of the cotton was gathered at the time of the service of the Britton *et al.* writ of assistance, September 26, 1896, none

was severed at the time of sale to Mayer, January 4, 1896, or
sale to Britton *et al.*, July 6, 1896, nor when those sales were
confirmed, on March 16, 1896, and July 24, 1896, respectively.
That question, then, is not in this case.

*F. A. McLain, A. G. Shannon,* and *E. H. Ratcliffe,* for
appellee.

Reily actually got no possession under the Mayer deed of
trust, and there was no way to put him in possession of an in-
dividual one-half interest by writ of assistance.    Unless a writ
of assistance could be executed by putting the tenant in common
of the other half interest out of possession of some part of the
land, then it is futile to talk about putting the tenant in common
in possession as against his co-tenant.    It is to be regretted that
the sheriff's return does not inform us more fully as to how he
did this.    The facts abundantly show that he in no way dis-
turbed those in the exclusive possession before the execution of
the writ.    It is further submitted that this writ of assistance
would be void for another reason.    It can only issue at suit of
the purchaser or complainant at the foreclosure sale.    Now, in
both of these cases, the purchaser at the foreclosure sale received
his deed in his own name, and subsequently sold to Reily, who
was in no way a party to the foreclosure suit or sale, and had
no right to the writ.    If Reily may be supposed to have come
into actual possession of an individual half interest, the tenants
remaining undisturbed, Carter had a lien for his rent and sup-
plies, upon which he was entitled to recover about the amount
he did recover, independent of the transfer of the tenants, and
even against Reily.    1 Washburn on Real Property, marginal
page 420 (15); 6 Am. & Eng. Enc. L., 492.    If the foreclos-
ure of the Mayer deed only carried a half interest, then Carter
remained tenant in common until the end of his lease, and the
decree and writ in the Britton case were simply void as to him,
because he was, at the institution of the suit in that case, a ten-
ant in possession, and was not made a party in that suit.    *Rail-*

*way Co.* v. *Walker,* 61 Miss., 481; *Jones* v. *Hooper,* 50 Miss., 515. He was willing to pay Reily the entire rent, $150, which Reily refused to accept, still the court paid him his rent and all expenses in the judgment, as there appears. As to the nine bales of cotton already gathered, he was simply a highhanded trespasser. *Weathers* v. *Class,* 54 Miss., 384–390. There is some conflict in the authorities as to a mortgagor's right to the crops growing at the foreclosure. As against an innocent tenant the purchaser ought only to have the rent. The law then being at least doubtful, that provision in the Britton deed which gave the mortgagor the right to possession and the rents, ought to count for at least a right to make a lease of agricultural lands for a year, and this would sustain our case, independent of the above points.

Argued orally by *D. C. Bramlett,* for appellant.

WHITFIELD, J., delivered the opinion of the court.

The first sale under the foreclosure of the first trust deed took place January 4, 1896, and was confirmed, deed being executed and delivered March 16, 1896. The second sale under the foreclosure of the second trust deed occurred July 6, 1896, and was confirmed, deed being executed and delivered July 24, 1896. The land, and the crops growing thereon and unsevered from the soil, passed to the purchaser at the foreclosure sale, from the date of the confirmation of that sale, July 24, 1896. If any part of the nine bales of cotton had been gathered prior to that date (which can be shown by testimony on another trial), such part would go to the appellee, the purchaser from the sublessees of the land. Prior to the confirmation of the sale, the trust deed was a mere security for the debt. After the confirmation, the purchaser at the foreclosure sale had an absolute title, in which the security had become merged; and the crops unsevered, then on the land, were as absolutely his as are the crops on any land the property of him who owns the land absolutely by full title.

The mortgagee who enters after condition broken, whether *in pais*, or after judgment in ejectment, on the legal title he has after condition broken, is, under our statute and decisions, simply a mortgagee in possession, under a legal title, it is true, but a legal title to be used simply to make his security available. The rents and profits which he gets, while so in possession, he receives as the property of the mortgagor, to be applied in liquidation of the mortgagor's debt to him. *Buck* v. *Payne*, 52 Miss., 271; § 2449, code 1892, with citations. Even if the mortgagee, after condition broken, secures merely a decree of foreclosure, that decree does not, *proprio vigore*, change the above rule. *Wathen* v. *Glass*, 54 Miss., 384; *Allen* v. *Elderkin*, 62 Wis., p. 628 (22 N. W., p. 842). But after the deed has been delivered, and foreclosure sale has been confirmed, the mortgagee claims no longer under the mortgage, as a mortgagee, having a mere security for his debt, and no estate in the land, but he claims, as absolute owner, under a confirmed sale and deed, having the whole estate in the land, and all the unsevered crops as part of the land. This is the true doctrine, clearly announced in the following decisions, from states which treat mortgages, as we do, as conferring no estate (by their execution) in the land, but as giving mere liens or security for the debt: *Beckman* v. *Sikes*, 35 Kan., p. 122; 10 Pac., p. 592; *Allen* v. *Elderkin*, 62 Wis., 628; 22 N. W., 842; *Downard* v. *Groff*, 40 Iowa, p. 598; *Smith* v. *Hayne*, 25 Kan., p. 248; *Gregory* v. *Rosenkrans*, 72 Wis., 222; 39 N. W., 378 *et seq.; Richards* v. *Knight*, 78 Iowa, 71; 42 N. W., 584; 2 Jones on Mort., sec. 1658; 1 Ping. Mort., secs. 880–884.

Of course, in states holding the view that the execution of the mortgage creates an estate in the land, the above rule is the law. *Jones* v. *Thomas*, 8 Blackf., 428; *Shepard* v. *Philbrick*, 2 Denio, 174; *Lane* v. *King*, 8 Wend., 585, 586, three decisions rendered at a time when, in New York and Indiana, the execution of the mortgage conferred an estate in the land. In Indiana the statute has been changed, and the mortgage put on

the footing it had under our statute. See *Heavilon* v. *Bank*, 81 Ind., 253, 254. The only decision we have seen to the contrary (in a state holding our doctrine as to mortgages and trust deeds) is *Cassilly* v. *Rhodes*, 12 Ohio, pp. 95, 96, a decision elsewhere repudiated (as in *Downard* v. *Groff*, 40 Iowa, p. 599, and *Jones* v. *Thomas*, 8 Blackf., 428) and manifestly unsound. It seems to be held, in *Richards* v. *Knight*, *supra*, that if the crops are matured when the sale is confirmed, and, as it is said, "no longer demanding nurture from the soil," they will pass to the purchaser from the mortgagor, though unsevered; but this is unsound, as is shown in *Beckman* v. *Sikes*, *supra*.

It is said that the lessee or tenant of the mortgagee ought not to be required to pay more than the rent, and that the mortgagor, after condition broken, is a tenant at will to the mortgagee, and entitled to emblements, and ingress and egress to harvest them. But, under the law, even as it has been held in this state, and the above states holding our view of mortgages, this is not true. A tenancy at will is determinable at the will of either party, and, when the parties place themselves in that relation, the law attaches to the relation, from the uncertainty of the tenure, the right, on the part of a tenant required to move out in the middle of a crop season, to his growing crops. Both parties understand this, and enter into the particular relation with full knowledge of the tenant's right fixed by the law. But the mortgagor, after condition broken, holds as by his contract only, modified, it is true, by the statute making the mortgage a lien only. His right to the growing crops, part of the soil, is measured by his contract, and liable to be cut off by a sale and confirmation in pursuance of that contract, if not matured and severed before confirmation. This is well settled. In *Lane* v. *King*, *supra*, it is said, quoting from Pow. Mortg., p. 213: "As to emblements, there is a distinction between tenants who have particular estates that are uncertain, defeasible by the act of the parties or by the act of God, and those who have particular estates uncertain,

defeasible by a title paramount; for, in the latter case, he that hath the right paramount shall have the emblements. The mortgagee, undoubtedly, as against the mortgagor and his grantees, has the paramount right."

And the court suggests, furthermore, in this case (page 585), that "there is no privity of contract or estate between the mortgagee and the purchaser of the interest of the mortgagor," saying such purchaser is a trespasser as to the mortgagee. In *Jones* v. *Thomas, supra,* this reasoning is noticed, but the court says the position is sound for a better reason, to wit, that "every person who takes under a mortgagor takes subject to all the rights of the mortgagee, unimpaired and unaffected. When, therefore," says the court, "a mortgagee obtains the absolute estate in fee of the mortgaged premises, by becoming the purchaser under a foreclosure and sale, he is entitled to the emblements, and may maintain trespass against the mortgagor or his lessee for taking and carrying away the crops growing at the time of the sale, the title and interest of the mortgagor being subject to, and liable to be divested by, a sale and fore-closure of the mortgaged premises," citing many authorities.

And in *Beckman* v. *Sikes, supra,* it is said: "The fact that the mortgagee . . . sold the growing crop prior to the . . . sale of the land, . . . does not vary the case, because he could not pass a title greater than his own; and therefore Sikes [the purchaser from the mortgagor] obtained no better right to the growing crop than Baker [the mortgagor] had or could give. Of course, the mortgage, as well as the decree of foreclosure, was only a lien upon the land, and con-ferred no title. The title and right of possession remained in the mortgagor until the sale and conveyance of the land. Until that time he was entitled to the use of the land, and to all the crops grown thereon that had ripened and were severed. The lien of the mortgage, however, attached to the growing crops until they were severed, as well as the land. The mortgagor planted the crop knowing that it was subject to the mortgage,

and liable to be divested by the foreclosure and sale of the premises. Anyone who purchased such crops from him took them subject to the same contingency, as the recorded mortgage and the decree of foreclosure were notice to him of the existence of the lien. If the land is not sold until the crops ripen and are severed, the vendee of the mortgagor would ordinarily get a good title; but if the land was sold and conveyed while the crop was still growing, and there was no reservation or waiver of the right to the crop at such sale, the title to the same would pass with the land," citing a multitude of authorities. And see 1 Pingree on Mort., secs. 880, 884.

The fact that Carter and the tenants in possession were not parties to the foreclosure suit—whatever effect that fact may otherwise have as to the remedy and the writs of assistance—does not alter the rights of the purchaser at the foreclosure sale, as against them. Those rights are just the same as if they had been parties, as clearly pointed out in *Downard* v. *Groff*, 40 Iowa, 598, 599.

                    *Judgment reversed and cause remanded.*