WOOD *v.* PACE *et al.*

(Division B. Oct. 10, 1932.)

[143 So. 471. No. 30133.]

J. F. Galloway, of Gulfport, for appellant.

190

J. L. Taylor and Mize, Mize & Thompson, of Gulfport, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

On October 28, 1931, the appellees secured a writ of injunction, without notice or hearing, restraining the appellant, Wood, from gathering a crop of pecans which he had grown on Myrtle Grove farm in Harrison county, Mississippi, during the year 1931.

The appellees charged, in their petition for the injunction, that they were the owners and holders of a lien on said Myrtle Grove farm secured by a trust deed, which was then being foreclosed by the trustee, and that the property was to be sold on November 2, 1931; and that, by reason thereof, they had a legal and equitable right in said property entitling them to the pecans grown on said property during 1931, whether picked or still hanging on the trees.

The appellant (Wood), defendant in the court below, answered, stating that appellees were not the legal owners and holders of the notes secured by the deed of trust, that said complainants (appellees here) had never been in actual possession of said notes either in person or by agents, and that they did not have any right to foreclose said trust deed or to collect said notes. He further alleged that, even if the appellees were the owners and holders of said trust deed and notes, they had no right to interfere with him (Wood) in the gathering

of the crop then growing upon the land, of any kind, class, or condition, and that it was by no means certain that the complainants would ever have any such right, or any interest in said land; that, even if they should become the purchasers of said land at the sale, they would not have any right, title, or interest in the crops grown upon said land by the appellant, defendant in the court below. He then set out the arrangement by which he was in possession and had grown crops upon the land, that he had been furnished the sum of six hundred and fifty dollars in cash for growing crops, and that, under his contract, he was due one thousand two hundred dollars for his services, and, in addition to that, twenty-five per cent. of the net proceeds of the pecans grown upon the marketing thereof. It was further alleged that Wood cultivated, grew, and marketed a small amount of vegetables, but that upon this venture there was a loss, but that he was not expected to produce much revenue on the growing of vegetables, they being planted to keep the ground cultivated, and to increase the yield of pecans, and to reduce the cost of growing same. He denied that complainants had any interest, legal or equitable, in the pecan crop, either at the time of suing out the injunction or upon the complainants becoming owners of the property, at the foreclosure sale, and denied that any purchaser of said land at said sale would have had any right in the pecan crop or any other crops upon said land; and denied that any person claiming through said trust deed had any right, title, or interest in said land superior to his; and denied that the trees were being injured in any manner or that he was prematurely gathering the pecans before they were ripe.

The proof shows, and the chancellor found, that there was no injury to the pecan trees by the manner in which the pecans were being gathered. The appellant (Wood) had gathered from two thousand two hundred to two thousand five hundred pounds at the time the injunction was sued out, and, after he was enjoined from

further gathering, none were gathered until after the foreclosure sale, when the appellees bought the property and an arrangement was made by which the crop was to be gathered by commissioners being appointed for that purpose, and who afterwards finished gathering the crop.

The contract relied upon by Wood reads as follows:

"For value received, I do hereby make the following contract with W. R. Wood, to be manager and workman on my Myrtle Grove Property on Wolf River in Harrison county, Mississippi, with the following understanding.

"The said W. R. Wood is to take charge of said farm, care for it in a good workmanlike manner during the year beginning December 1, 1930, and ending December 31, 1931. He is to receive for his services one hundred dollars per month, twenty-five per cent of the net proceeds from the sale of all of the crops grown upon said land, including vegetables, hay, fruits and especially the pecan crop.

"The said W. R. Wood is to make his compensation from the products of the farm as above stated, and if it does not produce sufficient to pay the amount agreed upon above, he is not to look to me for any difference.

"The said Wood is to gather said crops and market them, and is to furnish all labor and disinfectants and machinery in connection therewith. He has the right to use such machinery and equipment as I have on the place, and is also to have the use of a portion of the farm house and outbuildings on the property. I have reserved the right to occupy a portion of the residence for myself and visitors at such times as I may select. Strict accounts are to be kept and settled at the end of the year. This the 5th day of December, 1930.

"Jewell A. Sperling."

It is a little difficult to determine precisely what relation this contract created between the landowner and Wood. We think, however, that the contract is, in fact, a lease, and that the relation of landlord and tenant existed between Sperling and Wood. Under the contract,

as shown, Wood was to furnish labor and machinery for growing the crops, was to use a portion of the residence, and the outbuildings on the property, and was to receive twenty-five per cent of the net proceeds of the crops, and, in addition, enough to make up one hundred dollars per month, but, in order to get this one hundred dollars per month, he must produce enough to pay it, and, if he did not, he could not look to the landlord to supplement it.

The chancellor decreed that Wood should have the nuts already gathered when the injunction was sued out; but that the appellees, complainants in the court below, should have all the nuts growing upon the trees at the time the injunction was sued out.

It is clear, from any view, that the complainants (appellees here) were not entitled to such nuts as were growing upon the trees as were ready to be harvested. The complainants had no property right in the nuts which were ready to be harvested, and no interest in the real estate except the mere lien of the deed of trust, prior to the foreclosure sale.

At the common law, the mortgagee, or beneficiary in a deed of trust, on foreclosure becomes the owner of the property and of the crops then standing upon the land. Reily v. Carter, 75 Miss. 798, 23 So. 435, 65 Am. St. Rep. 621, wherein the court held that, on confirmation of sale in foreclosure of a trust deed, title to all crops then unsevered, and to only such passed to the purchaser, was decided in the year 1898. In 8 R. C. L. 362, it is said, in discussing the rights of the mortgagee before foreclosure, that: "It does not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof. Until the latter event, the mortgagor is entitled to such crops, with the same absolute right and dominion over them as if the mortgage did not exist."

The decision in the case of Reily v. Carter, supra, was based on the law existing prior to the enactment of sec-

tion 4472, Ann. Code of 1892, which section has been brought forward in all intermediate codes, and is now section 3468, Code of 1930, reading as follows: "In case of forfeiture under contract of purchase, the purchaser, and in case of foreclosure of deeds in trust or mortgages, the mortgagor shall be entitled to cultivate and gather the crops, if any, planted by him and grown or growing on the premises at the time of the commencement of the suit; and shall, after eviction therefrom have the right to enter thereon for the purpose of completing the cultivation and removing the crops, first paying or tendering to the party entitled to the possession a reasonable compensation for the use of the land. The court may, on demand of the defendant, adjudge the sum to be paid or tendered."

In the case of Parks v. Kline, 118 Miss. 119, 79 So. 81, this statute was construed as a remedial statute, to be given a liberal construction, and that construction was affirmed and reiterated in the cases of Joiner v. Leflore Grocer Co., 145 Miss. 31, 110 So. 857. In Opperman v. Littlejohn, 98 Miss. 636, 54 So. 77, 35 L. R. A. (N. S.) 707, our court seems to have adopted the view that the crops matured and ready to be gathered were personal property belonging to the tenant, and that the tenant had the right, after eviction, or after his lease expired, to a reasonable time in which to go upon the land and gather the matured crops, the syllabi in that case stating that:

"Where land is leased for a year, title to the crops grown thereon during the year vests in the tenant, subject to the statutory lien of the landlord.

"A tenant has, after the termination of the lease, a reasonable time in which to take away all his effects, and when he does not do so the landlord may remove them; but he does not acquire title because of the tenant's failure to remove."

Whether this construction was adopted as a result of the enactment of the statute quoted above is not material

here, for the reason that we think that the statute applies here. Giving the statute a liberal construction, and in the light of the decision in the case of Opperman v. Littlejohn, supra, we think that the nuts that were matured at the time of the suing out of the injunction were personal property and belonged to the tenant, Wood.

There seems to be a tendency in modern decisions to treat the fruit of growing trees, which have been cultivated and made to yield increase by labor and fertilizers by a tenant, as being within the principle of matured crops.

In Summerlin v. Orange Shores, Inc., et al., 97 Fla. 996, 122 So. 508, 510, the court, in discussing this question, said: "A distinction exists between crops which are the annual product of labor and cultivation of the earth and growing trees, fruit, and grass which are the natural product of the earth. The former are chattels, the latter are a part of the realty, and continue to be so until severed from the freehold. This distinction however has in later times been somewhat modified in some jurisdictions to the extent of classing as fructus industriales trees and shrubs raised in a nursery for the purpose of sale and transportation. [Citing authorities.] The old rule was that, where the root of the plant or the source from which the product came was perennial, existing in the soil, both the tree, vine, and the fruit were part of the realty and descended to the heir; but such product of the soil as depended upon a yearly planting and man's industry in cultivating and manuring the plant as it terminated and grew was deemed to be a chattel, and passed to the executor, or could be taken on execution. Since fruits of trees, such as peaches, apples, and other fruits, depend so much upon yearly cultivation and labor, including spraying for insects which attack and destroy the fruit, the yearly products of such perennial plants and trees are considered as chattels, while the tree itself is regarded as part of the

realty.'' See, also, 17 C. J. and authorities cited in the notes.

We are of opinion that the statute should be applied to the case at bar, and that there is a difference between nuts grown in a state of nature without cultivation, labor, or fertilizer, and those grown by cultivation, industry, and fertilizers by man; and that the ownership of nuts should be determined by their maturity or readiness for gathering rather than by the fact that they were actually upon the trees at the time of the suing out of the injunction.

We think, therefore, that the court erred in its judgment and that the injunction should have been dissolved, and that the court should have fixed a reasonable rental value, and allowed the appellant (Wood) proper damages for the suing out of the injunction.

The judgment of the court below will therefore be reversed, and the cause remanded for further proceedings in harmony with this opinion.

Reversed and remanded.