## CHARLES OPPERMAN *v.* CHARLES LITTLEJOHN.

### [54 South. 77.]

1. LANDLORD AND TENANT. *Termination of agricultural lease. Right of tenant to remove matured crop.*

    As between the landlord and tenant the annual crop raised on leased property constitutes no part of the freehold, and when matured or severed from the soil during the term of the tenant's lease, it becomes his personal property, which he may dispose of as he sees fit.

2. SAME.

    A tenant has a reasonable time after the expiration of an agricultural lease to gather and remove his crops, failing to do this the landlord may remove them and, if necessary, to get the use of his property may destroy them.

APPEAL from the circuit court of Warren county.

HON. CHAS. S. THOMAS, Special Judge.

Suit by Charles Littlejohn against Charles Opperman et al. From a judgment for plaintiff, defendant appeals. The facts are fully stated in the opinion of the court.

*Hudson & McKay,* for appellant.

The sole and simple question of law involved in this case is: To whom, the landlord or the tenant, does an unharvested crop belong after the expiration of a fixed and definite lease term? We answer, the landlord, and so beyond question answers the law.

At the outset, we assume that it is conceded that the common law obtained in this state, unless repealed, changed or modified by statute. 42 Miss. 1. It is also, of course, conceded that the common law, in the absence of a statute, is decisive of this case. Let us then address ourselves to the ascertainment of what the common law is as applicable to the facts before us. Authori-

ties without number and in point are at hand and we are happily assured with unanimity.

It may not be amiss to have a few rudimentary and fundamental definitions. In the first place, we here have to do with what in law is known as a tenancy for years, an estate for years, a tenant holding for a definite period, a lease whose day of expiration is prefixed, foreknown and made certain at the beginning. From page 958 of 24 Cyc., we quote: "Estates for years embrace all terms limited to endure for a definite and ascertained period, however short or long this period may be; that is to say, they embrace terms for a fixed number of weeks or months, or for a single year, as well as for any definite number of years, however great. "Every estate which must expire at a period certain and prefixed is in legal contemplation an estate for years. 9 Pa. Co. Ct. 56. A lease for years is a contract, by which one agrees, for a valuable consideration, called rent, to let another have the occupation and profits of land for a definite time. 50 N. C. 272.

We have to do too with emblements and we have found no better definition than in section 70 of Tiedeman on Real Property. We quote: "Emblements are the profits which the tenant of an estate is entitled to receive out of the crops which he has planted, and which have not been harvested, when his estate terminates."

And we will frequently meet the term "growing crops." In 20 Mich. 254, 4 Am. Rep. 388, the court said: " . . . this expression appears to have been commonly employed to distinguish crops still attached to the ground, rather than to mark any distinction between ripe and unripe crops." Growing crops are all unsevered crops.

Thus understanding the terms and the point at issue, let us listen to the authorities.

From page 320 of vol. 8 of Am. and Eng. Ency. of Law we quote: "Where the term is certain and fixed

in time, the tenant has no right to crops growing on the land at the time of the termination of the tenancy but maturing afterwards, for it was his own folly to sow when he knew that his estate must terminate before he could reap.'' From page 1069 of 24 Cyc. (III), we quote: ''At common law, where land is leased for a number of years, and consequently the period of its determination is fixed, and the lease is silent as to who shall be entitled to the growing crops on the land at the end of the term, the outgoing tenant is not entitled to such crops.'' 37 Me. 106; 48 Mo. App. 430; 10 Johns. (N. Y.) 424 and 360; 77 N. C. 255; 18 S. C. 108; 36 Tex. 149; 2 Rob. (Va.) 606; 1 W. Va. 197; 7 M. & W. (Eng.) 226. From page 211 of vol. 18, Am. and Eng. Ency. of Law, n. Emblements, we quote: ''The law has always been that if a tenant for years sows a crop during the last year of the term, and it is not harvested before the end of the term, the landlord is entitled thereto; the right to emblements is given to a tenant only when the termination of his tenancy is uncertain.'' From pages 545 and 546 of vol. 12 of Cur. Law we quote: ''The right to emblements does not exist where the term expires at a fixed time, but only when of indefinite and uncertain duration.'' From section 71 of Tiedeman on Real Property we quote: ''In order that a tenant may claim emblements, he must show that his estate was one of uncertain duration.'' From section 536 of Taylor's Landlord and Tenant we quote: ''This right (Emblements), however, never exists where the tenancy is for years, to be determined at the expiration of a certain period.'' Coke Litt. 55. From page 112 of 4 Kent we quote: ''The tenant for years is not entitled to emblements, provided the lease be for a certain period, and does not depend upon any contingency.'' Likewise was the Roman Law, Dig. 19, 29. To the same effect too are 2 Kerr on Real Property, section 1333; 1 Tiffany on Real Property, section 53; Blackstone 526.

From page 462 of 46 Sou. Rep. (Ala. 1908), we quote: "Where the tenancy is for a certain period, the tenant is not entitled to emblements on the termination of the tenancy." From page 510 of 30 Am. Dec., 7 Leigh Va. 632, we quote: "The lease in this case having a fixed and certain period for its termination, it is clear, beyond doubt, that the offgoing tenant had no right, at common law, to any crops growing on the land, after the termination of the lease . . ." To the same effect is 30 Am. Dec. 658, 4 Blackford (Ind.), 286. Unsevered crops are realty and follow the title to the land as a part thereof. 34 L. R. A. 286; 3 Sm. & M. 409; 75 Miss. 798.

*Anderson, Vollor & Foster,* for appellee.

Charles Opperman, a landlord, the appellant in this case, claims to be the owner of the four bales of cotton in controversy, which was planted and raised by Charles Littlejohn, tenant, appellee, because Littlejohn failed to pick and remove the cotton on or before the 31st day of December, 1909, the date of the expiration of appellee's lease of the land of appellant. This claim is made on the idea that the cotton remaining on the leased premises at the termination of the lease, became a part of the realty and was therefore appellant's property and tenant had no right to remove it after the lease had expired.

The position taken by appellant in this case is untenable, and it is doubtful if such an unjust claim was ever made before in the courts of this state. The argument made and the authorities cited in the brief of counsel for appellant would surely apply in the law of emblements in the case of a tenant, for a term of years, the termination of whose lease was fixed and certain, who sowed a crop that he could not hope to reap before the termination of his tenancy. In this state the tenant, appellee, sowed cotton and he had every reason to believe that he could pick and gather the fruits of his labor before his lease expired. We do not invoke the rule of

law applicable to the law of emblements for the appellee in this case, and we therefore contend that the brief of counsel has no application to the issue involved in this controversy.

By a reference to the agreed statement of facts, the court will see that the appellee leased land from the appellant for one year, to plant a crop of cotton, and that the lease was to expire on the 31st day of December, 1909; that he planted his crop, which he reasonably hoped to reap before the termination of his tenancy, but that he did not gather the four bales of cotton involved in dispute until about ten days after the lease matured.

The court will observe too from the agreed statement of facts that at the expiration of the lease, the crop matured. The fact that the crop was matured and ripe, ready for picking, made it the personal property of the appellee, with the right to remove it or otherwise dispose of it as he saw fit. The mature cotton could in no possible event under our law pass with the realty or become the property of the landlord at the termination of the lease.

"Crops that are mature are personal property, and are not part of the realty." Words and Phrases, title Personal Property.

In furtherance of this correct theory of the law upon which we base our claim to the ownership of this property, the following text expressed in Cyc. Law and Procedure, vol. 24, p. 1067, should finally and forever put an end to the unjust and unreasonable claim of the appellant here:

"As between the landlord and the tenant, the annual crop raised on the leased property constitutes no part of the freehold, and when matured or severed from the soil during the term of the tenant's lease, it becomes his personal property, which he may dispose of as he sees fit, in the absence of the provision in the contract for

the rental that the crops shall be the property of the landlord until rent is paid or secured, and where the rental is to be paid in a portion of the crop, the land-lord is not entitled to take his portion until it is either delivered to him by the tenant, or severed and set apart for his use.''

This cotton, at the time the appellant claimed it as a part of the realty, was matured, and was not a part of the realty, and being the personal property of the tenant, he had a right as the owner, to pick it and remove it within a reasonable time after his lease expired, sub-ject perhaps to a reasonable compensation to the land-lord for the use and occupancy of the land necessary for that purpose. This compensation the landlord does not contend for. He is claiming the absolute title to the cotton. The true and correct rule governing the case in point is set out in the decision of the case of *Smith* v. *Boyle,* 92 N. W. 1018. In this case the court held that ''A tenant does not forfeit his property to the landlord by neglecting to remove it within a reasonable time and such a rule would be wholly untenable.''

In the same case the court says: ''A tenant has a rea-sonable time after the termination of his tenancy to remove his family and personal effects, and is entitled to free ingress and egress for that purpose.''

Again: ''A tenant does not forfeit his right to per-sonal property belonging to him by neglecting to remove it within a reasonable time after the expiration of his lease.''

In the case of *Hecht* v. *Ditman,* 56 Ia. 679, 41 Am. Rep. 131, it is held in treating of grain that is matured and ready for harvest, that: ''It then possesses the char-acter of personal chattels and is not a part of the realty.'' Citing Gear, Landlord and Tenant, § 178; *Craig* v. *Dale,* 37 Am. Dec. 477.

The contention made by the appellant, if sustained would amount to a judicial highway robbery; especially

would this be true in a country like ours where the money crop, cotton, requires a longer period of time to make and harvest than any other crop grown, a crop that is often referred to as a thirteen months crop. It would be a monstrous and infamous rule that would deny a tenant the right to remove the remaining part of his crop from the leased premises within a reasonable time after his lease expired, which he might have been unable to pick and gather before.

We wish again to call the attention of the court to the fact that the brief of counsel for appellant deals altogether with the law of emblements, which law we do not in any manner question. If the appellee with a lease expiring December 31, 1909, as in this case, had sown oats, rice, wheat or any other crop in the fall, that would not mature, or which he could not reasonably expect to mature before the expiration of his lease, we could not be heard in a claim for unmatured growing crops ungathered in the field. The appellee in this case did not "Sow when he knew that his estate must terminate before he could reap," and counsel for appellant are unfortunate in citing the following in support of the claim of appellant for this cotton. The authority cited by counsel, which condemns their contention, taken from their brief, reads as follows:

"From page 320, vol. 8, Am. and Eng. Ency. of Law, we quote:

" '(2) Where a term is certain and fixed in time, the tenant has no right to crops growing on the land at the time of the termination of the tenancy, but maturing afterwards, for it was his own folly to sow when he knew that his estate must terminate before he could reap.' "

We are not dealing with the law of emblems in this case. We have a case here where the tenant planted an annual crop of cotton that would mature, in the very nature of things, a crop that did mature before the termination of his tenancy, the remaining portion of a crop

of cotton standing in the field that was gathered within ten days after his lease expired. We have here too an avaricious, unconscionable landlord claiming the fruits of this tenant's toil because the crop was not wholly gathered within the term of the lease, and this notwithstanding the courts are all agreed that a crop matured is personal property, subject to removal from the leased premises like a horse or wagon, farming implements, household furniture, or any other article of personal property that the tenant owned.

Argued orally by *W. I. McKay*, for appellant.

MAYES, C. J., delivered the opinion of the court.

On the 22d day of January, 1910, Charles Littlejohn instituted an action of replevin in the circuit court of Warren county to recover from Charles Opperman and the Yazoo & Mississippi Valley Railroad Company four bales of cotton; one bale weighing five hundred and fifteen pounds, another four hundred and thirty, another five hundred and twenty, and another six hundred. It seems that the Yazoo & Mississippi Valley Railroad Company is a nominal party, and that the real defendant is Charles Opperman. Littlejohn was successful in the above suit, and obtained a judgment against Opperman for the cotton, and also for damages in the sum of twenty-five dollars for the wrongful taking and detention of the property in question. Opperman prosecutes an appeal, and asks this court to reverse the judgment of the lower court and give him judgment, and the following constitute the facts on which the appeal to this court is based.

The appeal comes upon an agreed record. A jury was waived in the trial court, and the case tried by the judge without jury. It seems that on the 26th day of January, 1909, a written lease contract was made between Charles Opperman and C. H. Littlejohn, both of War-

ren county. By the terms of this lease Opperman leased to Littlejohn, for the year 1909, twenty-five acres of land known as the "Gibson plot." Under the contract Opperman agreed to furnish Littlejohn sufficient cash to make his crop at the rate of fifteen per cent. interest. It further appears that Littlejohn agreed to pay as rent seventy pounds of lint cotton per acre, of the first picking, the cotton to be of the quality known as "Bender," and the aggregate amount of rent being seventeen hundred and fifty pounds of lint cotton for the twenty-five acres. It was further agreed that Littlejohn should pick, gin, and deliver the cotton to Opperman at his gin on the plantation on or before the 21st day of October, 1909. It was further agreed that Littlejohn should cultivate the land under the management, supervision, and control of a manager to be selected by Opperman, and all the cotton belonging to Opperman to be ginned on the plantation. In pursuance of this contract it seems that Littlejohn went to work on the plantation and cultivated it during the year 1909, and, in so far as this record shows, presumably paid the rent and all money which was advanced by Opperman to him during the year. At all events, Opperman asserts no claim to the cotton in controversy as rent, or for money advances made to Littlejohn, under the terms of the contract. Some time prior to the expiration of the lease Opperman commenced to notify Littlejohn that the lease would expire on the last of December, and that at that time the premises must be surrendered. The cotton in controversy was raised by Littlejohn on the leased premises. At the expiration of the lease, and on the 31st day of December, 1909, the cotton in controversy was matured as of course, but standing unpicked in the field. After the expiration of the term—that is to say, after the 1st day of January, 1910—and in disregard of Opperman's notice, and over his protest, Littlejohn proceeded to gather the remaining cotton, which was the four bales in ques-

tion, and he did this as speedily as practicable, and, after picking it, placed it on the leased premises. Opperman refused to permit Littlejohn to remove the cotton from the premises, taking it into his own possession, and claiming that the cotton belonged to him, because not gathered at the date the lease expired, whereupon this writ of replevin was sued out.

The statement of this case would seem to carry with it the irresistible conclusion that the judgment of the court below was correct. When land is leased for a year, title to the crops grown on the place during that year, subject to the lien given the landlord by the statute, is as much vested in the tenant as is that of any other personal property which he may own. The cotton had finished its growth long before this controversy arose, and it no longer needed the soil for its sustenance. The title was in the tenant as absolutely as if it had been a herd of cattle, a drove of pigs, or a flock of sheep. After the termination of the lease the tenant had a reasonable time to take away all his effects, and this is just as much true of the cotton which stood matured in the stalk as of the household furniture or other character of personalty. It is possible that crops which have matured may be considered "growing crops" within the meaning of some statutes and for some purposes; but this cannot be held as between the landlord and tenant on the expiration of the lease, for the purpose of diverting title from the tenant and vesting it in the landlord. After the expiration of the lease, within a reasonable time, all of the effects of the tenant must be taken therefrom, and if this is not done the landlord may remove it; but he can never obtain title because the tenant fails to remove it. If the tenant leaves personal effects on the premises after the termination of the lease, the landlord may not only remove them after a reasonable time, but, if necessary in order to get the use of his property, may destroy them; but he cannot get title simply because the person-

al property is left on the premises after the termination of the lease. The tenant rented this land for the purpose of maturing this crop, and on maturity it became his crop.

There is no question in this case of a growing crop. There is no merit in this case. The facts show that Opperman not only leased this twenty-five acres at a high rental, that is to say, for seventeen hundred and fifty pounds of lint cotton, or nearly twelve dollars an acre, at the value it is agreed upon is the value of this cotton, but, in addition, charged fifteen per cent. for such money as was loaned to Littlejohn; but if this claim is to appertain, the rental is still further to be agumented by the confiscation of four more bales of cotton belonging to the tenant, and aggregating about 2065 pounds of lint cotton, of the agreed value of about $356.21, merely because this cotton was not gathered on the very day that the lease terminated. In short, by rental and confiscation, Opperman seeks to make this twenty-five acres of land net him the sum of six hundred and fifty dollars, to say nothing of the fifteen per cent. interest charged on all moneys loaned. In 24 Cyc. 1067, it is said: "As between the landlord and the tenant, the annual crop raised on leased property constitutes no part of the freehold, and, when matured or severed from the soil during the term of the tenant's lease, it becomes his personal property, which he may dispose of as he sees fit."

We do not think the case of *Reiley* v. *Carter,* 75 Miss. 798, 23 South. 435, 65 Am. St. Rep. 621, has any application to the facts of this case. In the Reiley case the question arose between the tenant and the purchaser at a foreclosure sale under a mortgage. Between the tenant and such purchaser there was no contractual relation whatever. Each was standing on his strict legal right. The tenant made the lease with conclusive presumption of a knowledge of the mortgage, and liability

to sale thereunder of the land in question, since it appears to have been recorded. The land was sold in July, in the midst of the season, and this court held that the purchaser thereunder got title to all unsevered crops at the date of the sale. But as between landlord and tenant no such rule appertains as to the matured crop after the expiration of lease. One of the necessary incidents of an annual contract is that the annual crops planted will be allowed to mature. The tenant sows his crop in this confidence, and he pays his rental for this purpose. Where the crop is matured, it belongs to the tenant under his contract with the landlord, and he must be given reasonable opportunity to harvest same. If conditions prevent the tenant from harvesting his crop on the very date that the lease expires, the matured crop is none the less his crop, and universal custom, justice, and law demand that he have reasonable opportunity to reap the fruits of his honest toil.

In the case of *Meffert* v. *Dyer,* 107 Mo. App. 462, on page 465, 81 S. W. 643, on page 644, the court said: "There is no question but what grain or other crops raised upon leased property, when matured or severed from the soil during the term of the tenant's lease, become personal property. It is true that plaintiff should have removed his corn from defendant's premises within a reasonable time. But we cannot see that by reason of his failure to do so the title vested in defendant. It is true defendant was under no obligations to care for the corn under the circumstances, but he had the right to remove it from the premises. The true ruling governing the case is stated in *Smith* v. *Boyle,* 66 Neb. 823, 92 N. W. 1018, 103 Am. St. Rep. 745, wherein it is held that the theory 'that a tenant forfeits his property to the landlord by neglecting to remove it within a reasonable time is wholly untenable,' and that 'it is fixtures only which the tenant forfeits or abandons by neglecting to remove them during the term of the lease, or while

still in the possession of the premises.' In *Hecht* v. *Dettman*, 56 Iowa 679, 7 N. W. 495, 10 N. W. 241, 41 Am. Rep. 131, in speaking of grain which had matured and was ready for harvest, the court decided that 'it then possesses the character of personal chattels, and is not to be regarded as a part of the realty.' We cannot conceive upon what theory plaintiff's failure to remove the corn vested any title to or in the defendant."

In the above case it is quite true that the crop had been severed and not removed; but the principle is the same, whether the crop be simply matured and ready for severance or severed. In each case the question turns upon the right of the tenant on the leased premises after the termination of the lease. This principle is clearly stated in the case of *Hecht* v. *Dettman*, 56 Iowa 679, on page 680, 7· N. W. 495, 41 Am. Rep. 131, on page 132, where the court says: "It cannot be denied that when the grain is cut it ceases to be a part of the realty. . . . There is no reason why the act of cutting should change the property in the grain. We think the ownership of the grain should be determined by its condition (its maturity), not by the act of cutting, which cannot be done as soon as it is demanded by its condition. We conclude that the reason the grain was mature and uncut was because defendant was unable to do the work. Having sown in peace, and in a just belief that he could rightfully reap, we think he should have been permitted to do so."

This is undoubtedly the law as to the agricultural leases, and this cause is affirmed. *Affirmed.*

SMITH, J., concurs in the result.