JOINER *v.* LEFLORE GROCER CO. *et al.*\*

(Division A.  Dec. 13, 1926.  Suggestion of Error Overruled.  Jan. 24, 1927.)

[110 So. 857.  No 26040.]

1. APPEAL AND ERROR. *Irregularity in party being brought in by interpleader by defendants, being harmless, and objected to only generally, held not ground for reversal.*

   Irregularity by which one was made a party by bill of interpleader filed by certain defendants not having been objected to by him, except by general objection reserved in his answer, and not being harmful to him, is not ground for reversal after trial on the merits.

2. MORTGAGES. *Purchaser at mortgage sale of land planted by mortgagor's lessee is not entitled to rent reserved, but only subsequent reasonable rental (Hemingway's Code, section 3323).*

   Purchaser at mortgage foreclosure sale of land, previously rented by mortgagor, and planted by his lessee, is, under Hemingway's Code, section 3323 (Code 1906, section 5051), not entitled to rent reserved and assigned and thereafter falling due, but only to reasonable rental for subsequent use of land.

---

\*Corpus Juris-Cyc. References: Appeal and Error, 3 C. J., p. 746, n. 16; p. 768, n. 7; 4 C. J., p. 926, n. 27·New; Mortgages, 41 C. J., p. 999, n. 80 New.

APPEAL from chancery court of Leflore county.
HON. C. L. LOMAX, Chancellor.

Suit by the Leflore Grocer Company against J. J. Frasier and others.  From adverse decree R. A. Joiner, made a party by bill of interpleader of certain defendants, appeals.  Affirmed.

*S. L. Gwin* and *C. B. Snow* for appellant.

I.   This appellant was an improper party in this cause and was not properly brought into it.  It is the contention of this appellant that the subject-matter of the orig-

inal action and the subject-matter of his claim were entirely separate and distinct and that he propounded no claim to the subject-matter of the original action and, accordingly, had no place in this suit. This procedure is exactly the same attempted in *Delta Insurance & Realty Co.* v. *Fourth National Bank of Montgomery, Ala.*, 89 So. 817, which governs this case exactly and under the holding of the court therein this appellant was clearly not a proper party to this action.

The procedure by which the attempt was made to bring him into this case in the court below was entirely unauthorized and illegal. Although the procedure under which this defendant was brought into this case was described as a bill of interpleader, it was in reality nothing more and nothing less than a cross-bill. We are unable to find any authority for a defendant in a court of equity to file a bill of interpleader as an interlocutory petition.

If the complainant desires to introduce new parties he amends his bill and makes them. If the interest of the defendant requires their presence he takes the objection of non-joinder. Griffith's Ch. Pr., section 382. If the defendant banks in this action had desired to avail themselves of the remedy of interpleader, they should have filed a separate action and moved the court for a consolidation of the causes. Griffith's Ch. Pr., section 382.

But conceding for the sake of argument that the bill of interpleader was the proper procedure in this case in the court below, it is our contention that in no event would a bill of interpleader lie, for the reason that the fundamental ground on which a bill of interpleader is maintainable is that separate defendants are making claim to the same subject-matter, and in this case we submit that the subject-matter of the claim of the two defendants to the bill of interpleader filed in this cause are entirely separate and distinct.

The claim of the Leflore Grocer Company is based upon a promissory note evidencing the rental on the premises known as the Joiner Plantation for the year 1924,

of which note the Leflore Grocer Company claims to be the holder in due course, and the claim of this appellant, Joiner, is based entirely upon his rights to the collection of the rent on said premises, as the owner thereof, when the rent became due.

One of the tests of whether or not a bill of interpleader is maintainable is laid down by Chancellor Griffith in his work on equity procedure, section 423 thereof. See also *Hyman* v. *Cameron,* 46 Miss. 727, 55 Miss. 645.

II.  Appellant Joiner is entitled to a paramount lien on the fund paid into court. This appellant having acquired the title to the premises prior to the time that the rental for the year 1924 became due, became entitled to the rental for said year; and, accordingly, became entitled to a landlord's lien on the crops produced on said premises during the year 1924; and, accordingly, became vested with a landlord's lien on the money paid into court by the defendant's banks, derived from the proceeds of the crops for the year 1924.

It is well-settled law in Mississippi that the purchaser of land is entitled to the rent of the land purchased, which became due after his purchase, and it is equally well settled that the fact that the claim for rent has been transferred does not defeat his right. The line of the decisions of this court beginning with *Wolf* v. *Johnson,* 30 Miss. 513, and including *Bloodworth* v. *Stevens,* 51 Miss. 475; *Dunton* v. *Sharp,* 1 Miss. 231; *Hatch* v. *Sykes,* 64 Miss. 307; *Watkins* v. *Duvall,* 69 Miss. 364; *Bowdre* v. *Sloan,* 69 Miss. 369; and *Allan* v. *Smith,* 72 Miss. 689, are all to the foregoing effect and are undisputable.

*H. C. Mounger,* for The First National Bank of Greenwood and the Greenwood Savings Bank, appellees.

I.  Joiner's claim is founded on the assertion of a lien for rent, claiming the landlord's lien on the cotton raised on the premises. Joiner had no lien for the rent.

He was not the owner of the land at the time that the rent contract was made. He had sold the land to Walton. Fraiser and Wade were not his tenants. He had no rent contract with them, either verbal or written. They did not attorn to him; but they did have a rent contract with Walton and did attorn to Walton.

In order for the landlord's lien to exist there must be some kind of rent contract, either verbal or written. Joiner did not become the owner of the land until October 30, 1924, when he acquired the trustee's deed. He does not come within the statute in the chapter on Landlord and Tenant. There must be a privity of contract before the landlord's lien applies.

"A careful examination of the statute authorizing an attachment for rent (H. & H. Dig. 558, sections 46-47) has led us to concur in the view urged by counsel that there must be a special contract; a lease either written, or a valid verbal lease, before the owner of the premises can be entitled to the remedy." *Tifft* v. *Verden,* 11 S. & M. 163; *Briscoe* v. *McElween,* 43 Miss. 567; *Morgan* v. *Long,* 73 Miss. 409; Taylor's Landlord and Tenant, sections 436-37; *Patty* v. *Bogle,* 59 Miss. 494; *Carberry* v. *Howell,* 114 Miss. 554; *Hill* v. *Gilmer,* 21 So. (Miss.), 528; *Parks* v. *Kline,* 118 Miss. 125; *Love* v. *Law,* 57 Miss. 597; 36 C. J. 488; *Jamison* v. *Acker,* 14 So. 692; 2 Taylor on Landlord and Tenant (9th Ed.), section 561; Hemingway's Code, section 2330. This section of the code states that every lessor of land shall have a lien on the agricultural products. He must first be the lessor. The mere fact that he becomes the owner of the land does not entitle him to the landlord's lien.

The most that Joiner could claim would be a reasonable amount for the use and occupation from the time he got his trustee's deed until the end of the year. Under section 3323, Hemingway's Code (section 5051, Code of 1906) the mortgagor was entitled to cultivate and gather the crops, if any, planted by him and growing on the premises at the time of the commencement of the suit;

and, after eviction therefrom had the right to enter thereon for the purpose of completing the cultivation and removing the crops, first paying or tendering a reasonable compensation for the use of the land. This is all that Joiner could claim.

Before the passage of this act, under the common law, the mortgagee on foreclosing was entitled to all the crops. But this common-law rule has been abrogated by the above-named section. Section 3323, Hemingway's Code; *Opperman* v. *Littlejohn,* 98 Miss. 636; *Parks* v. *Kline,* 118 Miss. 119.

The cases cited by counsel for Joiner in reference to his claim for rent were all decided before section 3323, Hemingway's Code, was enacted and have no reference to the case at bar.

II.   Joiner contends that the bill of interpleader was improperly filed by the banks and that he was an improper party to this suit. There was no demurrer to the bill of interpleader by Joiner nor motion to strike out. We think this was preeminently a case for a bill of interpleader.

Here were the banks innocently in the possession of a fund. The banks laid no claim to this fund which was due some one for rent. Here were two parties claiming the same fund. They were making the same claim. They were claiming that they were each the landlord and entitled to the landlord's lien. If the banks paid it to one, they might have to pay the same sum again to the other. Or, at least, they would be vexed with litigation. The banks claimed no interest in this fund and were perfectly indifferent as to which one of these parties got the fund. And in filing the bill of interpleader, they did the only thing that could be done under the circumstances and brought the money into court, inviting all parties interested to come in and contend for it. Whether the banks filed a separate suit—and we believe it is admitted by counsel that the banks could have filed a bill of inter-

pleader in a separate suit—makes no difference, because counsel suggest that the suits could have been consolidated. It was a saving of time and trouble and avoided a multiplicity of suits by filing the bill of interpleader in this case. 2 Story's Equity 116; *Yarbrough* v. *Thompson*, 11 Miss. 294; *Anderson* v. *Wilkinson*, 18 Miss. 601; *Hyman* v. *Cameron*, 46 Miss. 725; *Kelly* v. *Howard*, 98 Miss. 566.; *Snodgrass* v. *Butler*, 54 Miss. 45; Fletcher on Equity Pleading, section 772.

· But it is contended that Joiner was improperly brought into this suit by the bill of interpleader. The banks were already sued in the chancery court. There was no reason why the banks should file an original bill against Joiner and then ask for the cases to be consolidated. *Hyman* v. *Cameron*, 46 Miss. 727; 2 Story's Equity Jur., sections 807-08; Fletcher on Equity Pleading and Practice, section 773.

In most of the cases suit had already been brought in the circuit court. This being the case, it was necessary to file an original bill in chancery. But where the case is already in the chancery court, there was no necessity of filing a separate suit in the chancery court and then moving for a consolidation. Section 555, Hemingway's Code.

While this provision is found under the chapter on Circuit Court Practice, we submit that it applies equally to chancery court practice as far as it is applicable. This section provides for bringing in new parties who have claims to the subject of the action. See also section 465, Hemingway's Code; *McAlister Brothers* v. *Sanders*, 107 Miss. 288.

The same liberal rule which is introduced in the circuit court by section 555, Hemingway's Code (section 772, Code of 1906) was already recognized in the chancery procedure. We further submit that section 555 applies to chancery procedure. *Adams* v. *Commercial Co.*, 113 Miss. 610. The statute says all things contained in this chapter not restricted by their nature or by ex-

press provision to particular courts shall be the rules of decision and proceeding in all courts whatsoever.

The case cited by counsel, *Delta Ins. & Realty Co.* v. Fourth Nat'l Bank, 89 So. 817, has no application to the case at bar. In that case there was no claim to a common fund. Both parties were not claiming under the same right or title. But in this case both parties were claiming the identical fund which was in possession of the banks and they were both claiming it by the identical right and title, that of a landlord's lien. It was preeminently a case for the filing of a bill of interpleader.

*Osborn & Witty,* for R. T. Wade, appellee.

As we see it, in making the contention that he was entitled to the rent for the year 1924, appellant simply overlooked section 3323, Hemingway's Code. Neither did appellant take into consideration the express holding of this court in the case of *Parks* v. *Klein,* 79 So. 81, 118 Miss. 119, where it is held that a mortgagee in a deed of trust is not entitled to the crops on the plantation at the time of the foreclosure. See also *Reynolds et al.* v. *Polk,* 109 So. 698. Appellant's foreclosure of his mortgage was *in pais,* and there was no suit instituted in connection with the foreclosure. We say, therefore, that appellant is precluded from ever asserting any claim for rent against the tenants Frasier and Wade, even for the months of November and December, 1924, because he made no demand for possession of the premises, and instituted no suit of any kind to evict said tenants, and it was held in *Blackwell* v. *Barnett,* 52 Tex. 326, that the foreclosure of a mortgage *in pais* is not a suit.

*R. C. McBee,* for Leflore Grocer Company, appellee.

Counsel for appellant contends that the bill in interpleader is in reality in the nature of a cross-bill, the effect of which is to bring into the case new parties and

that new parties cannot be brought into an action by a cross-bill. We do not complain with that statement of the law, nor do we complain of the further statement "that if the defendant banks in this action had desired to avail themselves of the remedy of interpleader, they should have filed a separate action and moved the court for a consolidation of the cases."

In the first place, we submit that this is exactly what was done. Counsel seem to think that this rule means that the bill of interpleader should have been given a separate number by the clerk and a separate place on the general docket and that then a formal motion should have been made to have the two cases separately docketed and numbered as one case. Formalities are perhaps better observed in following such a procedure, but upon the filing of the bill of interpleader on motion first made, the result is that a consolidation of the cases was had, and thus the rule cited in Griffith's Chancery Practice was complied with.

It was long ago held by this court that "persons not parties defendant to the original bill have no right to file a cross-bill but where the complainants elect to treat such a proceeding as a cross-bill, by answering it, will not be dismissed before final hearing." Smedes & Marshall Chancery, 26; *Walker* v. *Brungard,* 13 S. & M. 724-50. This statement of the law was approved in *Eustice* v. *Holmes,* 52 Miss. 305.

Counsel's brief misconceives the claim of the Leflore Grocer Company. It is true, of course, that the original bill of complaint is based upon the promissory note which is described therein, but after setting out the fact that the note was executed as a rent note and making it an exhibit to the cross-bill, and alleging that the complainant was the holder thereof in due course, the bill alleges that "the complainant then and there became the legal and equitable holder of the statutory landlord's lien against all the agricultural products grown on the said Joiner Plantation during the year 1924," and the bill

among other things prays that the lien of complainant be adjudged to be paramount and superior to the other liens.

When Joiner came to propound his claim to the fund in controversy, if he desired to attack the sufficiency of the bill as a bill of interpleader, he should have filed a demurrer.   33 Cyc. 461.

It thus follows that Joiner, by propounding his claim to the fund as landlord, cannot now complain that his claim was separate and distinct, and that he propounded no claim to the subject-matter of the original action, and that he had no place in the suit.

It is, of course, elementary law that a party must show that the error in the judgment of a court affects his rights before he can obtain a reversal.  Among other things provided by section 3220, Hemingway's Code, is "that one of several appellants shall not be entitled to a judgment or reversal because of an error in the judgment or decree against another, not affecting his rights in the case."

The purpose of the legislation adopting that statute was to change the law.  Such was the holding of this court in *Riley* v. *Carter,* 87 Miss. 812.  A more recent similar announcement is found in *Reynolds* v. *Polk,* 109 So. 698. See, also, *Parks* v. *Kline,* 118 Miss. 119-25.

*S. L. Gwin* and *C. B. Snow,* in reply, for appellant.

That rent of land is an incident to the reversion and that the purchaser of the leased premises during the term of the lease becomes the landlord of the tenant, are propsitions so fundamental and so numerously decided in this state and all other jurisdictions that it is impossible to believe that counsel is serious in his contention.  *Wolf* v. *Johnson,* 30 Miss. 513; *Bloodsworth* v. *Stevens,* 51 Miss. 475; *Duntore* v. *Sharp,* 1 Miss. Dec. 231; *Hatch* v. *Sykes,* 64 Miss. 307, 1 So. 248.; *Watkins* v. *Duvall,* 69 Miss. 364; 13 So. 727; *Bowdre* v. *Sloan,* 69 Miss. 369, 11 So. 631; *Allan* v. *Smith,* 72 Miss. 689, 18 So. 579.

A tenant may by executing a negotiable note elect to render himself personally liable, without regard to circumstances or conditions, for the amount of the note, but he cannot by voluntarily giving a negotiable note, any more than in any other manner, prejudice or preclude the rights prior in point of time or title to the lease contract and to the rights of both mortgagor and tenant alike. *Wolf* v. *Johnson,* 30 Miss. 513; *Bowdre Bros. & Co.* v. *Sloan,* 69 Miss. 369, 11 So. 631.

The bill of complaint of the Leflore Grocer Company alleged that the note was acquired by it in due course, but this is expressly denied by the answer of appellant, Joiner, and there was no proof nor attempt to make proof on the part of the Leflore Grocer Company of the allegation of the bill in this respect, and no such proof appears in the record.

While the negotiability of the note and the manner in which it was acquired by the Leflore Grocer Company might have affected, but for the decree discharging them, the personal liability of the makers of the note in favor of the Leflore Grocer Company, it cannot affect the rights of the appellant, Joiner, who was not a party to the note and who asserts his claim for the rent by virtue of the ownership of the land before the rent became due under liens existing and recorded long prior to the making of the lease contract.

If this were an attempt by the purchaser to claim the crops on the land purchased, by whomsoever grown, the person who owned or was interested in the crops might have acquired, by compliance with the statute, section 3323, Hemingway's Code (section 5051, Code of 1906), relied upon by the appellees, the right to proceed with the cultivation and gathering of the crops. That statute was adopted to change the rule existing in this state to the time of its adoption that the purchaser of the land, acquired by such purchase the ownership also of the crops by whomsoever produced on the premises purchased. It is in derogation of the common law and

should be strictly construed and limited to the purposes expressed therein. It was not intended to and does not affect the usual incidents of ownership of land, nor apply in a controversy between rival claimants, not to the crops, but, as in this case, only to the right to receive the rent which the tenant or person in possession has contracted to pay, and under our decisions has contracted to pay whomever may be the owner of the land at the time the rent falls due. There was, however, no compliance or attempt to comply with the statute in this case, nor payment or tender of any amount of rent as provided by the statute as a condition precedent to the right of the person in possession.

Argued orally by *C. B. Snow,* for appellant, and *S. I. Osborn* and *H. C. Mounger,* for appellees.

McGOWEN, J., delivered the opinion of the court.

The Leflore Grocer Company filed its bill in the chancery court of Leflore county against J. J. Frasier, R. T. Wade, the First National Bank of Greenwood, Greenwood Savings Bank, Leflore Compress & Storage Company, and the Greenwood Compress & Storage Company, setting up that Frasier and Wade had rented the ''Joiner plantation'' for the year 1924 from the owner, H. Lester Walton; that on August 26, 1924, they executed their rent note for four thousand one hundred dollars as rental for said plantation for the year 1924, dated August 26th, and due November 15th of the same year; that complainant purchased said rent note from the payee, H. Lester Walton, and was the holder thereof in good faith, having acquired it in due course before maturity for a valuable consideration on September 26, 1924, and from such date complainant was the legal and equitable holder of the lien given by the statute to the landlord for rent on all the agricultural products raised by the tenants, Frasier and Wade, during the year 1924, and that

the date of filing the bill the note was past due and unpaid.

It was further alleged that in February, 1924, Frasier also executed his note to the defendant, the First National Bank of Greenwood, for one thousand five hundred dollars, and, to secure said note executed a deed of trust upon the crops raised on the said plantation during the year 1924; and that likewise a note and deed of trust had, in the spring of 1924, been executed by the tenant to the Greenwood Savings Bank for two thousand dollars.

Complainant further charged that Frasier and Wade had raised about seventy bales of cotton, and removed same from said plantation without complainant's consent, and had stored it with the defendant compress companies, and that the said compress companies had issued their warehouse receipts for the said cotton, and had delivered said receipts to the First National Bank, of Greenwood, Miss.

The bill further charged that, as landlord, they had a lien on the agricultural products and on this cotton, especially for the amount of their rent note, and prayed for a decree awarding them a lien on the agricultural products and the cotton stored in the warehouse, and for a recovery of the note as against the full amount of crops raised, in the hands of the compress companies and the receipts therefor and have an enforcement of their lien as against all the parties. Process having been issued, the First National appeared, and filed its answer, and briefly admitted having the compress receipts for eighty-one bales of cotton raised by Frasier and Wade on the Joiner plantation in the year 1924; set up the bales of cotton received, the gin numbers, the warehouse receipt numbers, and dates thereof, the last of which was December 6, 1924; denied any knowledge as to the condition of the rent or as to who was the holder of the rent note, and made a full and complete discovery with reference to its dealings with the cotton

raised on this plantation; set up that it was ready to pay the rent to whomsoever the court might adjudge it legally belonged, and made their answer a cross-bill; set up that Joiner, in the year 1924; had acquired title to the land, and was asserting a claim for the rent for the year 1924, and sought to interplead and make parties to its cross-bill Joiner and Walton.

Wade answered to the effect that he was only surety for Frasier, and asserted that the rent note of four thousand one hundred dollars was due to the First National Bank, and insisted that this note should be paid from the proceeds of the sale of the cotton. He likewise made his answer a cross-bill and Joiner a party thereto.

Thereupon Frasier filed an affidavit substantially in the language of section 555 of Hemingway's Code on the chapter entitled "Circuit Courts," and set up Joiner's claim to the rent for the plantation in the year 1924. Thereupon complainant, the Leflore Grocer Company, filed a demurrer raising the question that Joiner was a new party sought to be brought in by the defendant, the First National Bank, and the court sustained that demurrer. Thereupon the next step was that the First National Bank and the Greenwood Savings Bank secured from the court an order granting permission, and directing that a bill of interpleader of the First National Bank et al. be filed in the cause. The bill of interpleader was filed in pursuance of said order, setting up, in addition to the facts already stated, that Joiner was the owner of the plantation, and conveyed the same by warranty deed to H. Lester Walton, and retained a vendor's lien for deferred payments amounting to thousands of dollars; and also that H. Lester Walton executed, simultaneously with the notes, a trust deed upon the lands to secure the payment thereof.

It was further set up in the bill of interpleader that there were foreclosure proceedings on October 30, 1924, a sale by the trustee under the deed of trust, and that the mortgagee, Joiner, was the purchaser on November

30, 1924, of the lands on which the crops were raised by Frasier and Wade; that, when the trustee on that date executed the trustee's deed to the mortgagee, Joiner, he (Joiner) was contending for, and claiming, a landlord's lien and a right to the rental for the proceeds of the rent note of four thousand one hundred dollars, and that he was contending that he had a lien on the cotton and other agricultural products raised by the tenants on the land during the year 1924. They prayed that they be allowed to interplead and deposit the money in the court with their bill, and that Joiner and all the parties named be brought in; that the rights of all parties be brought in and adjudicated; and asked that the Leflore Grocer Company be enjoined from proceeding with its bill in equity until this bill of interpleader was disposed of. The injunction was granted by the court, and all the parties, including Joiner, were brought in, and the other parties set up facts that have been heretofore detailed. The original complainant answered, however, having first had its demurrer to the bill of interpleader overruled and a motion to dissolve the injunction likewise overruled.

The original complainant, the Leflore Grocer Company, answered, and propounded its claim as the assignee of Walton to the proceeds of the note as against the cotton held by the complainant in the bill of interpleader. All the parties appeared and submitted themselves to the jurisdiction of the court on the bill of interpleader.

The First National Bank of Greenwood asserted its claim to the amount of its note under this mortgage on the crops; the Greenwood Savings Bank likewise asserted its claim for two thousand dollars under its mortgage. Joiner appeared and answered without interposing any demurrer or making any point as to the regularity or irregularity of the bill of interpleader thus filed, but generally reserved to himself the benefit of exceptions and objections to the bill of interpleader as filed. From his answer, it appears that in 1919 he conveyed these

lands to Walton, and retained a vendor's lien for deferred payments, and also Walton executed a trust deed on the "Joiner plantation" to secure payment of the debt thus created.

To show exactly what we conceive to be Joiner's position assumed by him in his answer as to the claim propounded by him, we quote the following:

"This defendant, by virtue of his ownership of said land, became the landlord of the tenant thereof, and became entitled to the rent of said lands for the year 1924, which said rent in the sum of four thousand one hundred dollars became due on November 15, 1924, and is entitled to, and has under the laws of Mississippi, a lien upon all the agricultural products grown on said land during the year 1924 for said rent, which this defendant is advised and believes he has the right in equity to trace into and recover from the proceeds of said crops in the hands of defendant banks and paid into this court, and therefore has a right to the funds so paid into this court, inasmuch as this defendant has a lien on the said crops and the proceeds thereof prior and paramount to all other liens and claims."

His prayer was:

"Wherefore this defendant prays the decree of this court, declaring a decree in his favor as the owner of said land and the landlord for the year 1924 *on said fund, and decreeing the same to be paid to this defendant.*" (Italics ours.)

Also he set up his acquisition of the title on October 30, 1924, by deed from the trustee.

The only proof offered was the note for four thousand one hundred dollars offered by the assignee, the Leflore Grocer Company, and some proof as to the rental value of the Joiner plantation, but no proof was attempted to be offered by Joiner or any one else as to the rental value of the plantation for the balance of the year after the date of his trustee's deed, October 30, 1924. It does not appear that the tenants, Frasier and Wade, offered

to pay anything for the use and occupation of the premises aftcd Joiner's acquisition of the title by foreclosure proceedings; nor does it appear as to how long they occupied the lands, if at all, after October 30, 1924. Indeed, it does appear that the crops had been removed in the main prior to the foreclosure proceedings, and most of the bales of cotton were shown to have been delivered to the compresses before the date of Joiner's deed, and no cotton is accounted for subsequent to December 6, 1924. Joiner made no claim to a mortgage on the crops raised by the tenants during that year.

Upon the pleadings and proof, the chancellor decreed that the four thousand one hundred dollars tendered with the interpleader, with interest, be paid over by the clerk to the Leflore Grocer Company, and directed that the Leflore Grocer Company be denied any other relief.

The claim of the defendant R. A. Joiner propounded by his answer was denied.

The First National Bank of Greenwood and the Greenwood Savings Bank of Greenwood, interpleading complainants, and the surety on their injunction bond, were discharged from further liability. Joiner was taxed with the costs of the proceedings prayed for, and was allowed to appeal to this court with *supersedeas.*

Appellant, Joiner, assigns as error and as ground for reversal the following: First, The chancellor erred in permitting the defendant banks to file their bill of interpleader, and contends that the interpleader interposed by defendants is an improper pleading. Second. Appellant contends that the rents of the land for the year 1924 followed the reversion, and, having purchased the interest in the land of the lessor, Walton, before the due date of the rent for the year 1924, he (Joiner) was entitled to the rent accruing for the land thus purchased during the year 1924.

On the first proposition as to the propriety of the pleadings, counsel cites Griffith's Chancery Practice, section, 382, which unquestionably states the proper rule for

equity pleading approved by the courts of Mississippi. Strangers and new parties may not be introduced into a cause by a cross-bill. The complainant may amend his bill and introduce new parties. If the defendant's interest requires new parties, he may make the objection of nonjoinder to the court, but the court, at any stage of the proceeding, finding it necessary to introduce a new party in order to administer equity and full justice, may halt the proceedings and require the new party to be brought in. In this case the court permitted the defendant, the banks, to file a bill of interpleader, and granted a demurrer and injunction against the original complainant, and thereupon all the defendants were brought in, especially Joiner, who made no objection by demurrer or plea to the bill of interpleader save by the general objection reserved in his answer. The merits of the controversy were thus brought to an issue irregularly, and issue having been joined, the chancellor adjudicated the rights of the parties. If no injustice was done Joiner otherwise, we would not at this late date reverse the case and order a new trial. In *Walker* v. *Brungard,* 21 Miss. (13 Smedes & M.) 751, in the chancellor's opinion, we have this statement:

"The cross-bill of Thomas F. Walker introduces new and different parties and interest, with distinct and independent matters. Had this been excepted to in the form of a demurrer, plea, or claim to object to the same on final hearing, I should have been disposed to keep out of consideration of the original bill, all matters which relate to the claims of Salmon and Mrs. Brungard, her agents and trustees; but as the whole cross-bill is answered in detail, and the answers relied upon on final hearing, it is my duty to decide the whole case."

The high Court of Errors and Appeals, at the conclusion of this opinion, speaking through Mr. Justice Clayton, approved the opinion of the chancellor in the following language:

"We have now gone over all the points made in the argument, and have been struck with the accuracy of the conclusions, to which a laborious investigation conducted the mind of the chancellor. His written opinion exhibits a thorough acquaintance with the facts in all their relations. We think his decree was correct, and that it should be in all things affirmed. Decree affirmed."

We are inclined to the view that the bill of interpleader filed by the defendant banks, together with an injunction granted by the chancellor restraining the original complainant from the proceedings with his cause, was the equivalent, in substance, though not in form, of filing a new and independent bill, and that, the defendant having answered and propounded fully his claim to the rent for the year 1924, no harm resulted to Joiner because of the irregularity of the pleading, and in this we think we are sustained by all of our adjudicated cases.

On the second point, that, as purchaser of the land before the due date of the rent for the year 1924, Joiner was entitled to the rents for that year as against the assignee of the mortgagor and lessor, Walton, counsel for appellant relies upon the cases of *Wolf* v. *Johnson,* 30 Miss. 513, and other cases applying the common-law rule, and more especially the case of *Bowdre Bros. & Co.* v. *Sloan,* 69 Miss. 369, 11 So. 631, the syllabus of which is as follows:

"Sale of land. Rents. Right of purchaser. Previous assignment. The purchaser of land at partition sale is entitled to the rent falling due after his purchase, if not expressly reserved, and may distrain therefor, notwithstanding a rent note, previously given therefor, had been assigned by the landlord to another, who contests the purchaser's right to such rent. See *Watkins* v. *Duvall,* ante 69 Miss. 364, 13 So. 727."

This was unquestionably the rule in Mississippi until the Code of 1892 went into effect. Mr. Justice WHITFIELD, in enforcing the common-law rule in the case of *Reily* v. *Carter,* 75 Miss. 798, 23 So. 435, 65 Am. St. Rep. 621, has

this to say with reference to the effect of section 4472 of the Code of 1892, which is brought down and found in Hemingway's Code as section 3323, and section 5051, Code of 1906:

"We have thus fully gone into the last two points, because this case is to be determined by the law as it stood prior to the enactment of section 4472 of the Code of 1892. The first foreclosure bill was filed in November, 1895, and the second in January, 1896, and the crops were raised in 1896, and were, of course, not 'planted' or 'growing' at the 'commencement of either suit.' This wholesome statute happily changes the rule in this state, and gives a mortgagor, who has a crop growing or planted when the foreclosure suit is begun, the right to such crops, upon the 'payment or tender of reasonable compensation for the use of the land,' which amount the court may adjudge. It is a most beneficient statute, which will prevent much injustice in the future. Judgment reversed, and cause remanded."

Section 3323, Hemingway's Code (section 5051, Code of 1906), reads as follows:

"In the case of forfeiture under contract of purchase, the purchaser, and in case of foreclosure of deeds in trust or mortgages, the mortgagor shall be entitled to cultivate and gather the crops, if any, planted by him and grown or growing on the premises at the time of the commencement of the suit; and shall, after eviction therefrom have the right to enter thereon for the purpose of completing the cultivation and removing the crops, first paying or tendering to the party entitled to the possession a reasonable compensation for the use of the land. The court may, on demand of the defendant, adjudge the sum to be paid or tendered."

In the case of *Parks* v. *Kline*, 118 Miss. 119, 79 So. 81, Chief Justice SMITH held that the section, *supra,* applied, and that the purchaser, similarly situated to Joiner, was entitled only to reasonable compensation for the use of the land from the date of the purchase, and that

145 Miss.—4.

the assignee of the lessor was entitled to claim the benefit of this statute as against the purchaser at the trustee's sale. Chief Justice SMITH said in part:

"Appellee's contention is that section 5051, Code of 1906 (section 3323, Hemingway's Code), has no application here, for the reason that the crop in question was neither planted, cultivated, nor gathered by Hawkins, the mortgagor in the deed of trust at the foreclosure of which appellant purchased the land. This is true, but we think the statute should not be so construed as to limit the right therein conferred solely to the mortgagor in person, but includes, not only the mortgagor, but all persons claiming through him. The statute is remedial, and should be so construed as to give full effect to its purpose."

In the case of *Reynolds et al* v. *Polk* (Miss.), 109 So. 698, Justice ANDERSON said in part:

"Appellee, to sustain his position, refers to *Reily* v. *Carter* 75 Miss. 798, 23 So. 435, 65 Am. St. Rep. 621, and *Lane* v. *King*, 8 Wend. [N. Y.] 584, 24 Am. Dec. 105. We do not think the principle there involved has any application to the facts of this case. It was the rule at common law that a purchaser of land at a foreclosure sale under a mortgage on confirmation of the sale obtained a good title to all the crops on the land that were unreserved. In the first place, that rule has been changed by our statute, section 3323, Hemingway's Code (section 5051, Code of 1906), and, in the second place, the common-law principle had no application to a conveyance of his land by a landlord where his interest in the crops had been fixed by contract with his tenants."

To state it plainly, our court is committed to the idea that the above-quoted section 3323, Hemingway's Code, section 5051 (Code of 1906), changed the rules so clearly announced in the case of *Bowdre Bros. & Co.* v. *Sloan*, *supra.*

It follows that the court correctly held that Joiner, as the purchaser of the land at a trustee's sale on October

30, 1924, before the due date of the rent, was not entitled to the rent from the Joiner plantation for the entire year of 1924; but that the assignee of the lessor and mortgagor, Walton, was substituted to Walton's rights as landlord, and the only right which Joiner would have was the rent for a reasonable use and occupancy on and after the date of his deed to the end of the year.

Joiner made no effort to prove in this case as to what the reasonable rental would be, nor did he show that there was occupancy, or use and occupancy, by the tenants subsequent to the date of his deed, but confined his evidence to proof of reasonable rental for the entire year. We are unable to ascertain from this record whether he could not make said proof, or would not, preferring to stake his claim upon the rule which obtained in Mississippi prior to the Code of 1892.

We are therefore of the opinion that the correct result was reached by the chancellor in this case.

*Affirmed.*