In re John C. "Wiley"
HILBURN, Debtor.

**Bankruptcy No. E84–20025.**

United States Bankruptcy Court,
N.D. Mississippi.

July 1, 1986.

T.H. Pearson, Clarksdale, Miss., for John C. Wiley Hilburn.

Marc E. Brand, Hobbs & Brand, and Roger Meagher, Jackson, Miss., for Federal Land Bank.

## ·OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motion filed by the Federal Land Bank of Jackson requesting that the debtor, John C. "Wiley" Hilburn, be required to pay reasonable compensation for the use of land which was foreclosed by the Federal Land Bank of Jackson on June 20, 1985; response to said motion having been filed by the debtor; all parties being represented before the Court by their respective attorneys of record; and the Court having heard and considered same, finds, and adjudicates as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A)(B) and (O).

### II.

On February 16, 1984, John C. "Wiley" Hilburn (hereinafter "debtor") filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. At the time of filing, debtor was indebted to the Federal Land Bank of Jackson, Mississippi, (hereinafter "FLB"); said indebtedness was secured by deeds of trust on two parcels of real property.

On April 6, 1984, FLB filed a motion for relief from the automatic stay or in the alternative for adequate protection. The motion for relief from the automatic stay was denied, but after negotiations between counsel, an order was entered providing adequate protection in the form of the abandonment of 160 acres and certain capital stock possessed by the debtor. The stay was lifted as to this 160 acres and an order entered January 4, 1985. FLB foreclosed its deed of trust encumbering the 160 acres on June 20, 1985, and a substituted trustee's deed was recorded in the Chancery Clerk's Office of Bolivar County, Mississippi, reflecting FLB as grantee.

Between the date of the order lifting the automatic stay and the date of foreclosure, the debtor planted rice and soybean crops on the 160 acres while being advised that FLB would be *unwilling* to lease the property to him. FLB made no effort to evict the debtor after foreclosure, and the rice and soybean crops were harvested between the months of September and November in 1985.

FLB contends that it is owed rent by the debtor for the period between the foreclosure until the harvest of said crops. FLB contends that §§ 11–25–25 and 11–25–115, Mississippi Code of 1972, require a mortgagor, whose deed of trust has been foreclosed while growing crops exist on the land, to harvest said crops provided "reasonable compensation" is paid for the use of such property. FLB also contends that the rental due should be granted an administrative priority pursuant to 11 U.S.C. § 503(b).

### III.

§§ 11–25–25 and 11–25–115, Mississippi Code of 1972, are identical statutes except for the fact that one applies to justice court proceedings and the other to county and/or circuit court proceedings. They are both set forth in Chapter 25, Mississippi Code of 1972, under the heading of unlawful entry and detainer and both statutes read as follows:

Growing Crops. In case of foreclosure under contract of purchase, the purchaser, and in case of foreclosure of deeds in trust or mortgages, the mortgagor shall

be entitled to cultivate and gather the crops, if any, planted by him and grown or growing on the premises at the time of the commencement of the suit; and shall, after eviction therefrom have the right to enter thereon for the purpose of completing the cultivation and removing of the crops, first paying or tendering to the party entitled to the possession a reasonable compensation for the use of the land. The court may, on demand of the defendant, adjudge the sum to be paid or tendered.

The statutes were enacted primarily to counter the harsh common law rule which provided that the mortgagee was entitled to a lien on all crops growing on the land, as well as, the land itself. Under common law anyone who purchased or took a subordinate lien on the growing crops of the mortgagor took subject to the mortgagee's lien. *Reiley v. Carter*, 75 Miss. 798, 23 So. 435, 437 (1898); *Wood v. Pace*, 164 Miss. 187, 143 So. 471, 473 (1932); *Joiner v. Leflore Grocer Company*, 145 Miss. 31, 110 So. 857, 860 (1927). Once the crops were severed from the estate they became the personal property of the mortgagor or tenant. *Id.* §§ 11–25–25 and 11–25–115 abolished the mortgagee's lien on the crops and entitled the mortgagor to continue the cultivation and harvest of the crops growing at the time of foreclosure. *Reynolds v. Polk*, 144 Miss. 223, 109 So. 698, 700 (1926).

The rule with regard to landlords and tenants is that after the termination of a lease, the tenant has the right to enter the land to harvest his *mature* crops. This expansion of the statute is based on the rule that a tenant has a reasonable time after the expiration of his lease to take away his personal property which includes crops ready for harvest. *Opperman v. Littlejohn*, 98 Miss. 636, 54 So. 77, 78–79 (1911); *Garner v. Stuart Company*, 222 Miss. 290, 75 So.2d 747, 748–49 (1954).

Debtor argues that to invoke the use of these statutes, there must be an action for unlawful entry and detainer coupled with an eviction. However, never in cases applying these statutes, has an eviction or an unlawful entry and detainer action been required. *See Garner v. Stuart Company*, 222 Miss. 290, 75 So.2d 747 (1954); *Wood v. Pace*, 164 Miss. 187, 143 So. 471 (1932); *Joiner v. Leflore Grocer Company*, 145 Miss. 31, 110 So. 857 (1927); *Reynolds v. Polk*, 144 Miss. 223, 109 So. 698 (1926); *Parks v. Kline*, 118 Miss. 119, 79 So. 81 (1918); *Opperman v. Littlejohn*, 98 Miss. 636, 54 So. 77 (1911) (tenant, after expiration of lease, allowed to harvest mature crops); *Reiley v. Carter*, 75 Miss. 798, 23 So. 435 (1898) (after foreclosure, mortgagor entitled to retain crops, planted or growing, before foreclosure suit begun).

It has been said that the statutes in question are remedial in nature and "should be so construed as to give full effect to its purpose." *Parks, supra* at 81. Additionally, the court in *Reiley, supra,* stated that:

> [t]his wholesome statute happily changes the rule in this state, and gives a mortgagor who has a crop growing or planted when the foreclosure suit is begun, the right to such crops upon the 'payment or tender of reasonable compensation for the use of the land,' which amount the court may adjudge. It is a most beneficial statute, which will prevent much injustice in the future. At 437.

### IV.

The next question raised by FLB is the amount of rent it should receive for the period, after foreclosure, in which debtor used the land in question to raise his crops. The statute suggests "a reasonable compensation for the use of the land." *Joiner, supra,* held that the amount is to be determined by the court. At 860. However, the statute is silent as to what criteria the court is to follow in awarding such compensation. FLB suggests that the following should be considered: (1) the type of crop being grown; (2) the length of time the crop has been growing; (3) the expected time of harvest of the crop; and (4) the amount of rent being paid by other tenants who are growing similar crops on similar land in the vicinity where the subject prop-

erty is located. The debtor suggests that a reasonable rental value for the entire crop year of 1985 was $35.00, per acre. Other criteria might include: the condition of the land and soil; the season or length of time the land is rented; the state of cultivation of the land; the amount of land used; the amount of previous rentals; the condition of the market as to the type of crops being grown on the land in question.

Considering the testimony of the debtor, as well as, that of the representative of FLB, Chris Wait, the Court finds that the debtor farmed between 110 acres and 130 acres during 1985, or an average of 120 acres. As noted hereinabove, the debtor has suggested that a fair rental rate is the sum of approximately $35.00, per acre, for the cultivatable acreage. The representative of FLB has suggested that a reasonable rental should be the sum of $45.00, per acre. Averaging these two figures nets a result of $40.00, per acre, for the acreage in cultivation. A gross rental due FLB using these averages would therefore be the sum of $4,800.00. (120 acres multiplied by $40.00, per acre). However, FLB would only be entitled to the receipt of rent subsequent to the date of foreclosure, i.e., June 20, 1985. Although the precise dates of planting and harvesting were not presented in the testimony, the Court notes that approximately six months elapsed between the time that the crops would ordinarily be planted and the time of harvest. Approximately two-thirds of that time occurred subsequent to the FLB foreclosure. Therefore, pursuant to 11 U.S.C. § 502(c), this Court estimates the unliquidated claim for rent due FLB at the sum of $3,200.00.

## V.

■ FLB also contends that the rent as determined by the court should be classified as an administrative priority expense based on 11 U.S.C. § 503(b), which provides in pertinent part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under § 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

. . . .

The terms "actual and necessary" have been interpreted to mean those "expenditures of the trustee for the cost of operating a business, for storage of property, for rent, for taxes and other costs incidental to [the] protection and conservation ... [of the estate]" 3 *Collier on Bankruptcy,* 503-15 (15th Ed.1985) (emphasis added). Further, it is stated that the payment of rent "if necessary, is recognized as an allowable expense of preservation of the estate incident to the proper administration of the debtor's assets." *Id.* at 503-16. *Accord, Matter of International Storage Corp.,* 41 B.R. 808, 11 C.B.C.2d 183 (Bankr. E.D.Wis.1984) (expenses for operating business chargeable under § 503(b)(1)(A)); *In Re Kors, Inc.,* 13 B.R. 683, 5 C.B.C.2d 872 (D.Vt.1981) (rent, incurred in the continuous operation of Chapter 11 debtor's business construed as administrative expense).

FLB cites the case of *In Re Axton,* 641 F.2d 1262 (9th Cir.1981), which held that:

[i]t is settled law that an allowance for use and occupancy by the trustee, receiver or debtor-in-possession, of premises leased by a bankrupt, debtor or receiver, is an expense of administration and does not arise out of the lease and has no relation to it. *S & W Holding Company v. Kuriansky,* 317 F.2d 666 (2nd Cir. 1963); *In Re Chakos,* 24 F.2d 482 (7th Cir.1928); *Lerner Stores Corp. v. Electric Maid Bake Shops,* 24 F.2d 780 (5th Cir.1928). It was entitled to priority as an actual and necessary cost and expense of preserving the estate, rather than being treated as a non-allocable claim to rent due by a debtor under provisions of 11 U.S.C.A. § 104(a)(5). *In Re Universal Medical Services, Inc.,* 357 F.Supp. 1137 (D.C.Pa.1973). At 1273.

Thus, expenses deemed "actual and necessary" to the continuance of the debtor's

business should be allowed as administrative expenses.

In this case, the aforementioned sum of $3,200.00, determined by this Court as a reasonable rent payable by the debtor to FLB, should be classified as an administrative expense priority. However, the Court notes that the debtor has indicated that all moneys received from the harvest of the 1985 rice and soybean crops have been expended, and that he actually earned no profit on these crops. Where funds are available or will be available to pay this administrative claim to FLB is anybody's guess at this time.

The Court is aware that the debtor is receiving rental income from the leasing of a restaurant business. Due to the filing of another contested proceeding in this case, the Court is also aware that this rental income has been possibly pledged as collateral, securing an obligation that the debtor owes to First South Production Credit Association. No payments to other creditors from these rental income proceeds shall be permitted by this Court until the contested proceeding involving First South Production Credit Association has been concluded.

An Order will be entered consistent with this Opinion.